Bryan *et al. v.* Wash *et al.*

GEORGE BRYAN *et al.*, plaintiffs in error, *v.* MILTON H. WASH *et ux. et al.*, defendants in error.

*Error to Sangamon.*

A delivery is essential to the validity of every deed, and to constitute a complete delivery, it is necessary that there should be an acceptance by, or on behalf of the grantee. It may be made by the grantor himself, or by any one authorized to make it; but it is not indispensable that the delivery be made to the grantee, or even to any person authorized by the grantee to accept the deed. A delivery may be made to a stranger for and in behalf of the grantee and to his use, although he may be entirely ignorant of the conveyance; but the delivery, in such case, must be unconditional and for the purpose of vesting the title in the grantee.

A deed takes effect from its first delivery, without regard to the time when it actually comes to the hands of the grantee, or even if it never does.

No particular form is necessary to constitute a delivery. It may be by acts without words, or by words without acts, or by both. Any thing which clearly manifests the intention of the grantor, and the person to whom it is delivered, that the deed shall presently become operative and effectual; that the grantor loses all control over it, and that by it the grantee is to become possessed of the estate, constitutes a sufficient delivery.

What a grantor in a deed said about the time, or since the delivery of the deed, cannot affect its validity, for if it once took effect, it is beyond the power of the grantor to destroy its validity.

The law presumes much more in favor of the delivery of deeds in cases of voluntary settlements, especially when made to infants, than it does in ordinary cases of bargain and sale. The same degree of formality is never required on account of the great degree of confidence, which the parties are presumed to have in each other, and the inability of the grantee, frequently, to take care of his own interests. The presumption of law is in favor of the delivery, and the burden of proof is on the grantor to show clearly that there was no delivery.

A. made and executed a deed of certain premises to his granddaughter, a minor, who was afterwards married. The deed was placed in the hands of her father, to be retained by him for her until she should arrive at sufficient discretion to take care of it: *Held*, that the deed was delivered to the father for the use and benefit of his daughter, and that thereby an estate was created presently in her.

BILL IN CHANCERY, &c., in the Sangamon Circuit Court, filed by the plaintiffs in error against the defendants in error. The cause was heard before the Hon. Samuel H. Treat, at the March term 1845, when the bill was dismissed.

The allegations of the bill, and the testimony in the case, so far as the same are material to its determination, are set forth in the Opinion of the Court.

*S. W. Robbins,* for the plaintiffs in error.

As to delivery, the Court is referred to *Utterback* v. *Binns,* 1 McLean, 243; *Herbert* v. *Herbert,* Bre. 282; *Jackson* v. *Phipps,* 12 Johns. 420; *Barlow* v. *Hinton,* 1 A. K. Marsh. 97; *Clark* v. *Gifford,* 10 Wend. 311. The deed was designed not to take effect then. *Jackson* v. *Hill,* 5 Wend. 532. A deed, requiring the assent of a third person, is inoperative till it is given; *Souverbye* v. *Arden,* 1 Johns. Ch. R. 240; and if taken before the assent is given, or condition happen, *non est factum* may be pleaded. *Wheelwright* v. *Wheelwright,* 2 Mass. 447; depending on a future event, *Church* v. *Gilman,* 15 Wend. 658; *Jackson* v. *Dunlap,* 1 Johns. Cases, 114; *Powers* v. *Russell,* 13 Pick. 77; *Mills* v. *Gore,* 20 do. 36.

As to notice to subsequent purchasers, see *Gilpin* v. *Davis,* 2 Bibb, 420; *Hinde* v. *Vattier,* 1 McLean, 118; *Robinson* v. *Rowan,* 2 Scam. 501. Possession is notice, *Barbour* v. *Whitlock,* 4 Monroe, 196; *Brown* v. *Anderson,* 1 do. 201; *Hackevith* v. *Damron,* Ib. 237. Notice to purchasers, &c. *Bates* v. *Norcross,* 14 Pick. 224.

The intention is the pole star for construction and decision of the cases. Fonblanque's Eq. 307–8, 315, 317–18; *Wilson* v. *Troup,* 2 Cowen, 233; *Howland* v. *Leach,* 11 Pick. 157; *Church* v. *Gilman,* 15 Wend. 660; 2 Starkie's Ev. 477; and that intention is discoverable from the facts and circumstances in the case evincing it. *Foster* v. *Mansfield,* 3. Metc. 415. As to intention and burden of proof, see 1 Greenl. Ev. § 189.

*S. T. Logan,* for the defendants in error.

A deed delivered is either delivered absolutely, or as an escrow.

It is essential to an escrow, that it be delivered to a third person, to be delivered on the happening of some event or contingency. *James* v. *Vanderheyden,* 1 Paige, 385.

A deed may be delivered by words, or acts without words, and the delivery may be made either to the grantee, or to a third person without any special authority for the use of the grantee. *Verplank* v. *Sterry,* 12 Johns. 536, 546, 551–2; *Souverbye* v. *Arden,* 1 Johns. Ch. R. 240; *Taw* v. *Berry,*

Dyer, 167, *b.*; *Cook's Adm'r* v. *Hendricks*, 4 Monroe, 503; *Inlow* v. *The Commonwealth*, 6 do. 74.

Where there is delivery to a third person to the use of the grantee, the consent of the grantee is presumed. *Church* v. *Gilman*, 15 Wend. 663.

The question is whether the grantor has divested himself of the estate; if he has, the estate vests in the grantee. If the delivery is absolutely as his deed to a stranger for the use of the grantee, the delivery is good. But if it be delivered to a stranger, subject to the future control of the grantor, no estate passes. Ibid.

A delivery is a parting with possession by the grantor, in such manner as to deprive him of the right to recall it. *Kirk* v. *Turner*, Dev. Eq. R. 14; 1 Barb. & Har. Dig. 397, § 7.

If, at the time of execution and delivery of a deed, there were no intention to deliver, the fact ought to be clearly and explicitly proved by the grantor. *Souverbye* v. *Arden*, 1 Johns. Ch. R. 240; *Barlow* v. *Hinton*, 1 A. K. Marsh. 97.

A deed delivered to a third person to be delivered to grantee when he shall come to town, the deed is good, if delivered before he comes to town; so, if grantor die before he comes to town, it will be good; which could not be if it were not grantor's deed before death. *Cook's Adm'r* v. *Hendricks*, 4 Monroe, 503.

*A. Lincoln*, in continuation for the defendants in error, cited *Morrow* v. *Alexander*, 2 Iredell's Law R. 388, 391; *Currie* v. *Donald*, 2 Wash. Va. R. 74; *Snider* v. *Lackenour*, 2 Iredell's Eq. R. 360; *Lessee of Lloyd* v. *Giddings*, 6 & 7 Ohio, 418–21.

*Robbins* concluded the argument for the plaintiffs in error.

The Opinion of the Court was delivered by

CATON, J.* This bill was filed in the name of George Bryan, Sr., by his agent, N. Bryan, to have a deed which was signed and acknowledged by complainant conveying land

---

* WILSON, C. J., did not sit in this case.

to Mary Jane Bryan, which is charged never to have been delivered, but wrongfully and fraudulently obtained by Wash, who had intermarried with Mary Jane Bryan,—restored to the safe keeping and possession of N. Bryan, with whom it had been deposited, and the record of said deed be made void and have no legal effect; and that said deed may abide said N. Bryan's discretion in the delivery, or remain with him till his improvements are paid for, which have been made under a lease dated 10th December, 1833, to N. Bryan, by his father, the complainant. Then follows a copy of the said lease and the indorsement of record, 25th February, 1842, and a copy of the deed from George Bryan, Sr., to Mary Jane Bryan, dated 28th September, 1837, and recorded 5th November, 1840. Then follows a mortgage, dated 10th day of November, 1841, from Milton H. Wash and wife to S. M. Tinsley, E. D. Taylor and Wm. Cowgill, to secure the payment of $1200, and acknowledged and recorded 12th November, 1841, all of the same premises.

Amended bill filed to make Nicholas Bryan defendant. The answer of Wash refers to the deed made to his wife, and charges that it was, as he is informed, delivered to N. Bryan, the father of said wife, for her use and benefit, and to be recorded by him; states that he was married to said Mary Jane Bryan in July, A. D. 1840, and is now her lawful husband; that in October, 1840, Mary D. Bryan requested Wash to call and see recorder of Sangamon, and see if said deed was recorded, and said she had handed this deed to James Taylor to be recorded, which he found was not then done; but a few days after, at the second request of Mrs. Mary Bryan, he called on said recorder, and found that it was recorded. Said Wash denies that he in any way, directly or indirectly, influenced his mother-in-law to have said deed recorded.

Defendant admits the mortgage to Tinsley, &c., for the consideration aforesaid, and says he owed them about $218, and N. Bryan owed them $340·44, and the balance to be paid in goods on his orders, a large part of which is paid; and that they refused to accommodate him, unless he would secure the above sum due them, from N. Bryan.

Denies the execution of said lease aforesaid, at any time; and if executed, that it was not executed before the deed to said Mary Jane; and charges that said suit was brought by N. Bryan without authority.

The joint and several answer of Tinsley, Taylor and Cowgill, charges that Geo. Bryan, Sr., made and executed in 1837, a deed to Mary Jane Bryan, now Mary Jane Wash, for the most of the land contained in the mortgage, and that one of them examined the record and found all regular. They deny that a deed was placed in the hands of N. Bryan for safe keeping, to be delivered at his discretion, and charge that said deed was unconditionally delivered to said N. Bryan; and they charge that the delivery to said N. Bryan, was, under the circumstances, a perfect delivery to the grantee, and that she had a legal right to it, and no person had a right to withhold it from her and her husband. They believe that Wash used no improper means to obtain the possession of said deed. They set up their mortgage as good and valid of date aforesaid, and said consideration, $1200, secured by five promissory notes of $240 each, payable at the end of five years.

They aver they had no notice of any defect in the title of Wash and wife, and allege they are *bona fide* purchasers for a valuable consideration without notice of any adverse claim. They admit they knew N. Bryan lived on the land, but did not know how he claimed it. They charge that this bill was filed by N. Bryan without the knowledge of complainant. They charge the lease dated 10th December, 1833, is fraudulent. They deny the lease was ever executed by George Bryan, Sr., or if so executed, has been antedated so as to overreach the deed to Mary Jane Bryan. They charge that said lease never was acknowledged before any officer, or recorded till after their mortgage.

The answer of Nicholas Bryan admits all the statements in the bill. There is a long special replication filed by the complainant, which contains statements of fact and law, and an argument in the cause which is sworn to by the complainant, but as special replications are not proper under our prac-

tice, at most, it can only be considered as a general repli-
cation; hence, it is unnecessary to refer to its contents.

The bill was afterwards amended by making Mary Jane
Wash, the grantee in the deed sought to be avoided, a defend-
ant, and Robert Bryan, an infant, alleged to be a subsequent
grantee of the same premises from George Bryan, a com-
plainant, who appeared by his next friend, Nicholas Bryan.
I will here remark that there is no proof of this last convey-
ance, so that there will be no necessity of attending to that
branch of the case again, although I am unable to see how
it could affect the ultimate determination of the case.  For
the complainant, Eliza C. Taylor, proves that she knew of
said deeds about the time they were made, and often heard
her grandfather, G. Bryan, and father, N. Bryan, about that
time and since, say that said deeds were put into N. Bryan's
possession to be delivered by him at his pleasure.  Witness
says she was present when her mother, Mary D. Bryan, handed
the deeds to James Taylor, her husband, for record; and
she then said, that if what Mr. Wash had said was true, she
thought the deeds should be recorded.  She spoke of the
Bank mortgage, and summons that had been served on her,
and seemed reluctant to have it done; and that she was
mainly influenced in doing so by the urgent representations
of Mr. Wash; she proves also that in the fall of 1833, N.
Bryan went to Kentucky, and returned in spring of 1834, and
on his return, she heard him speak of having obtained a lease,
and he began to make improvements on the land named in
the said lease; but she never saw said lease, to know it to be
such, till the fall of 1840, when said deed was handed to James
Taylor for record, and then she saw it in the hands of her
mother.

John M. Cabiness proves that Mr. Wash, in the spring of
1842, told him that Mr. George Bryan, Sr., had revoked his
deed to Mary Jane Wash, and that he, Wash, found said deeds
among the papers of N. Bryan, and had them recorded, and
that Wash said he would not contend any longer, because
said deed had not been delivered; this is the impression of
the witness, but he is not certain. Witness knows that N.

Bryan has lived on the place about eight years, and built the houses and fences, and broke the land.

James Taylor proves that he left the deed with the recorder; and then intended to get it and keep it until N. Bryan's return, and so call for it, but Wash had taken it in the mean time; that he received it from Mrs. Bryan, who said, when she gave it to him, that Mr. Wash had urged her repeatedly to have it recorded, and if his statements were true, she thought it best.

Benjamin Talbot proves that he, as recorder, received from James Taylor in the fall of 1840, a deed from George Bryan, Sr., to Mary Jane Bryan, dated 28th September, 1837, for for record, said Taylor agreeing to pay his fees. And said Taylor called for said deed; but Wash had, in the mean time, called, paid the fees, and taken the deed and said it made no difference. Witness objected to giving him the deed, but he assured him it would be all right, and witness reluctantly yielded to his wishes, but knowing he had married Mary Jane Bryan, witness let him take it.

Mary D. Bryan proves that she delivered said dee- to Jas. Taylor for record, and should never have thought of medling with said deed, except for the often repeated and great importunities of said Wash to that effect; that she is now satisfied Mr. Wash, by his false representations, intended to deceive her; she took said deed without any authority from any person, and she was apprehensive of its being wrong at the time. After she had handed the said deed as above to Mr. Taylor, Mr. Wash called to know why the deed was not recorded, and seemed in an ill humor; and on replying she did not know but it was recorded, he rejoined that he knew it was not, for he had been at the recorder's office every day. He said she need not fear to have said deed recorded, for he never intended to have any thing to do with the land, unless Mr. N. Bryan should give it to him. At the time she gave said deed to Mr. Taylor, as above, she had no design it should be delivered to Mr. Wash, but only be recorded and returned to the possession of her husband.

Proof of defendants; Thomas Pettus, son-in-law of George

Bryan, states that he heard a conversation between Mr. Wash and George Bryan, Sr., about a deed. Mr. Wash wished Mr. Bryan to re-acknowledge the deed, and Bryan refused, and said he had made the deed once; not certain whether the words were "made the deed," or "acknowledged it;" she heard no talk about an escrow, but was not present all the time; was present when Mr. Wash introduced the subject of the deed, and did not leave the room till the request and denial were both made; witness also proves that in the spring of 1842, George Bryan told him he knew nothing about said lease aforesaid, and that he never executed a lease to N. Bryan for said land. Also proves that about the time of making said deeds to N. Bryan's children, George Bryan said he was going to make them, and in a few days he returned and said he had made them.

Mrs. Pettus, daughter of George Bryan, proves that George Bryan told her he had not made such a lease, and knew nothing about it, and never heard of it till witness mentioned it. Witness heard her father say, about the time the deed was made, that he had made a deed to Mary Jane, and also to N. Bryan's other children.

This is the substance of all the evidence given on both sides. On a final hearing of the cause, the Court below dismissed the bill at the complainants' cost, to reverse which decree this writ of error is brought.

There is but one single question in the case, and that is, whether the deed from George Bryan to Mary Jane Bryan, dated September 28, 1838, was ever delivered so as to pass the legal title, because, if no title ever passed by that deed, Tinsley & Co. could by no possibility have acquired any rights upon it, no matter how innocently they may have relied upon the appearance of title in Mrs. Wash. If there was in fact no delivery of that deed and her husband got possession of it fraudulently, it gave neither his or her grantees any more title than it would had it been a forged deed, or had the grantor been induced to sign it supposing it to have been another paper. Obtaining it surreptitiously was a fraud in the execution of the deed, and it was absolutely and forever

void. The manner in which Wash obtained possession of that deed was by false pretences, and could be justified in no possible way, unless he supposed that it had been properly delivered and was the evidence of a title which had actually long since vested in his wife and was retained from her with the fraudulent design of depriving her of her own. If he believed that to be the real truth of the case, if not an entire justification of the course which he adopted to get possession of the deed, it may at least be considered as going a long way in extenuation. Not considering the possession of the deed by Wash as affecting the question of the delivery one way or the other, I shall examine the question precisely as if it were out of the case.

A delivery is essential to the validity of every deed. In order to constitute a complete delivery, it is requisite that there should be an acceptance by or on behalf of the grantee. *Jackson* v. *Dunlap*, 1 Johns. Cases, 114. The delivery may be made by the grantor himself or by any one authorized to make the delivery, nor is it indispensable that the delivery be made to the grantee, or even to any person authorized by the grantee to accept the deed, for if the delivery be made to a stranger, for, and in behalf of the grantee, and to his use, it is a good delivery, although the grantee may in truth be entirely ignorant of the conveyance, for, if the delivery be absolute, the assent of the grantee is presumed from the fact that the conveyance is beneficial to him. In such case however the delivery must be unconditional and for the express purpose of vesting title in the grantee. 1 Shep. Touch. 57, 58; *Verplank* v. *Sterry*, 12 Johns. 520; *Jackson* v. *Phipps*, Ib. 421; *Belden* v. *Carter*, 4 Day, 66; *Wheelwright* v. *Wheelwright*, 2 Mass. 447; *Hatch* v. *Hatch*, 9 do. 307; *Ruggles* v. *Lawson*, 13 Johns. 285; *Church* v. *Gilman*, 15 Wend. 656. These cases also show that the deed takes effect from the first delivery, no matter when it comes to the hands of the grantee, or even if it never does. No particular form or ceremony is necessary to constitute a delivery. It may be by acts without words, or by words without acts, or by both. Any thing which clearly manifests

the intention of the grantor, and the person to whom it is delivered, that the deed shall presently become operative and effectual; that the grantor loses all control over it, and that by it the grantee is to become possessed of the estate, constitutes a sufficient delivery. The very essence of the delivery is the intention of the party. If, then, it shall be found that George Bryan executed and delivered this deed to his son, Nicholas Bryan, the father of Mary Jane, intending thereby to give her the land; that she should thereby become the object of his bounty, there was a sufficient delivery, and no subsequent act or omission, either of her father or grandfather, could deprive her of it. But if, on the other hand, he merely placed the paper in the hands of his son, as a convenient place of deposit, still intending to retain control over it himself, and deliver it or not as he should subsequently think best, then there was no delivery and he still retained the title.

Taking the whole case together, it is to my mind exceedingly clear, that the old gentleman had selected his granddaughter as the object of his bounty; that he had selected this land as a proper settlement upon her, and that with a view of executing that purpose, he made this deed and delivered it to her father, as her natural guardian, to be retained by him for her till she should arrive at sufficient discretion to keep and take care of it herself. It appears to me that the evidence, both of the complainants and defendants, establishes this most conclusively.

Although the record in this case is very voluminous, yet all that is material is contained in a very small compass. In the bill the complainant seeks to avoid the natural presumption, that the deed was delivered to Nicholas Bryan, for the use and benefit of his daughter, by insisting that he had been for many years the agent of the grantor, and as such, had entered this land, and, as his tenant, had occupied and improved it, and hence seeks to raise the presumption, that as his agent, also, he had received this deed, and not as the agent of his daughter. But when we remember that the statements of the bill are not evidence, and that the answer

of Nicholas Bryan is not evidence as against the other de-
fendants, there is not a shadow of proof left tending to
establish this agency, upon which so much reliance is had.
Some reliance is also placed on the testimony of Eliza C.
Taylor, who testifies, that she knew of, said deeds about the
time they were made, and often heard her grandfather,
George Bryan, and her father, Nicholas Bryan, about the
time and since, say that said deeds were put into N. Bryan's
possession, to be delivered by him at his pleasure. It is not
what the grantor said about the time, or since the delivery
of the deed, that can affect its validity one way or the other,
for if the deed once took effect it was beyond the power of
the grantor to destroy its validity. *Villers* v. *Beaumont*,
1 Vern. 100; *Ball* v. *Newton*, Ib. 464. The only question
is, then, what was the intention of the grantor at the very
time he parted with the deed, and what he said about that
time, cannot be considered as evidence at all, unless it may
be thought to throw some light upon his intention at the time
the deed passed from his hands. But admitting that the ex-
pressions heard by Mrs. Taylor expressed correctly his inten-
tion at the time he delivered the deed, still it in no wise
helps the complainants' case. The statement is, that the
deeds were put into the hands of Nicholas Bryan, to be by
him delivered to his children, the grantees in the deeds, at
his pleasure. From this we learn distinctly, that the deeds
passed from the hands of the grantor, with the intention that
they should pass into the hands of the grantees at such time
as their father should see fit to place them there, but clearly
at some time at any rate. It is clear that they passed beyond
the control of the grantor, and depended in no way upon
any act or volition of his to give them validity. It is manifest
that they were placed in the hands of the father of the chil-
dren, as the most fit and proper person to have their cus-
tody, until, in his judgment, they were old enough to take
care of themselves. It seems to me that such is the most
natural and probable construction of the expression, "to be
delivered by him at his pleasure." Besides, there is other
evidence evincing the intention of the grantor to create an

estate presently in the hands of the grantees. Thomas Pettus, the son-in-law of the complainant, says, that about the time the deeds were being made to the children of Nicholas Bryan, the complainant told him when he was going to town, that he was going to make deeds to the children of Nicholas Bryan, and when he had returned, he said he had made such deeds. Mrs. Pettus, the daughter of the complainant, states substantially the same; in this, the intention of the complainant to convey the lands to Mary Jane and his other grandchildren, without any sort of reservation. In the forcible language of counsel, it is clear that George Bryan intended to vest the title in Mary Jane, and to intrust the muniment of title with her father. His son's pleasure was not be exercised in regard to whether the title should vest in the infant grantee or not, but only as to the most proper time when the evidence of that title should be delivered to her.

It must be remembered, that the law presumes much more in favor of the delivery of deeds in case of voluntary settlements, especially when made to infants, than it does in ordinary cases of bargain and sale. The same degree of formality is never required, on account of the great degree of confidence which the parties are presumed to have in each other, and the inability of the grantee, frequently, to take care of his own interests. The presumption of law is in favor of the delivery, and the burden of proof is on the grantor to show clearly that there was no delivery. It was so adjudged by Chancellor Kent, in the case of *Souverbye* v. *Arden,* 1 Johns. Ch. R. 256, where he says: "A voluntary settlement fairly made, is always binding in equity upon the grantor, unless there be clear and decisive proof that he never parted, or intended to part with the possession of the deed, and even if he retains it, the weight of authority is decidedly in favor of its validity, unless there be other circumstances besides the mere fact of his retaining it, to show that it was not intended to be absolute." And in support of this latter proposition, he cites, among others, the cases of *Clavering* v. *Clavering,* 2 Vern. 473; *Broughton* v. *Broughton,* 1 Atkins, 625; *John-*

*son* v. *Smith*, 1 Ves. 314, which, upon examination, will be found fully to sustain him. So, also, in the case of *Bunn* v. *Winthrop*, 1 Johns. Ch. R. 336. The Chancellor says: "The instrument is good as a voluntary settlement, though retained by the grantor in his possession until his death. There was no act of his, either at the time or subsequent to the execu-tion of the deed, which denoted an intention contrary to that appearing on the face of the deed."

The case before us is much stronger than is necessary to bring it within these principles. Taking all of the circum-stances of the case together, the object which the grantor had in view, the age of the grantee, who, I infer from the whole case, was still quite young, and the relationship exist-ing between all the parties, the mind is constrained to the conclusion, that the deed was delivered by George Bryan to his son Nicholas, who was the father of Mary Jane, for her use and benefit, and that thereby an estate was created pre-sently in her.

The complainants were not entitled to the relief sought for in their bill, and it was, therefore, properly dismissed by the Court below.

The decree of the Circuit Court is affirmed with costs.

*Decree affirmed.*