## Leon Van Zele, Appellee, v. H. H. Cleaveland and James McNamara, trading as Cleaveland & McNamara, Appellants.

### Gen. No. 6,413.

1. CHATTEL MORTGAGES—*what necessary to extend lien.* Under the Chattel Mortgage Act (J. & A. ¶ 7579), filing with the justice of the peace of an affidavit of extension of a mortgage and entry by him of same upon his docket are necessary to extend the lien of the mortgage, notwithstanding the act may have been otherwise complied with.

2. CHATTEL MORTGAGES, § 134*—*when mortgage transfers legal title at time of delivery.* A chattel mortgage in form "granting, selling, conveying and confirming" the mortgaged property to the mortgagee, transfers the legal title at time of delivery of the mortgage.

3. CHATTEL MORTGAGES, § 131*—*when increase of live stock covered by mortgage.* The increase of live stock after delivery of a chattel mortgage upon such live stock "granting, selling, conveying and confirming" such property to the mortgagee without referring to increase thereof is subject to the mortgage.

4. CHATTEL MORTGAGES, § 209*—*when trial of right of property is proper remedy to determine right to property.* Trial of the right of property under the Act of 1875 (J. & A. ¶ 6814), levied upon by an execution creditor and claimed by a third party under a chattel mortgage, is the proper form of action to determine the rights of the respective parties to the property in question.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

5. CHATTEL MORTGAGES, § 209*—*what demand upon sheriff levying is necessary before commencement of action to try right of property.* No other demand upon a sheriff levying upon property taken as that of a judgment debtor need be made by a third party claiming the property under a chattel mortgage before commencing action to try the right of property under the Act of 1875 (J. & A. ¶ 6814) than notification to the sheriff in form and manner prescribed in the statute.

Appeal from the County Court of Henry county; the Hon. L. E. TELLEEN, Judge, presiding. Heard in this court at the April term, 1917. Reversed and remanded. Opinion filed August 7, 1917.

H. A. WELD, for appellants.

JOSEPH L. SHAW, for appellee.

MR. PRESIDING JUSTICE CARNES delivered the opinion of the court.

This is a trial of right of property under the Act of 1875 (J. & A. ¶ 6814 *et seq.*). The sheriff of Henry county, October 5, 1916, levied an execution issued on a judgment of the County Court in favor of the appellants, Cleaveland & McNamara, on 9 head of cattle in the possession of the judgment debtor, Thomas Gabriel. Leon Van Zele, the appellee, notified the sheriff that he claimed the cattle, and the sheriff notified the judge of the County Court, as provided in section 1 of the Act (J. & A. ¶ 6814). The cause was docketed. The plaintiffs in the execution appeared and a trial before the court without a jury resulted in a judgment in favor of the claimant, from which this appeal is prosecuted.

Appellee grounds his claim entirely on a chattel mortgage given him by the execution debtor, Thomas Gabriel, November 30, 1912, to secure an indebtedness of $1,640, with interest at 6 per cent., due November 30, 1915. Certificates on the mortgage show that it was duly acknowledged before C. F. Luther, a justice

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

of the peace, and entered by him, and duly recorded in the recorder's office of Henry county. There is also indorsed on the mortgage affidavits of the mortgagor and mortgagee, certified to be subscribed and sworn to before C. F. Luther, justice of the peace, November 18, 1915, stating that $1,640 is still due on said mortgage, and will become due by extension November 18, 1916. The affidavits in form and substance meet the requirements of section 4 of our Chattel Mortgage Act (J. & A. ¶ 7579) for extension of chattel mortgage debts, but that section requires that the affidavit shall be filed "for record in the office of the recorder of deeds of the county where the original mortgage is recorded, also with the justice of the peace, or his successor, upon whose docket the same was entered," and that the "affidavit shall be recorded by such recorder and be entered upon the docket of said justice of the peace, and thereupon the mortgage lien originally acquired shall be continued and extended." There is a second certificate of the recorder that the mortgage was recorded November 29, 1915, which was after the date of said affidavits, and we assume sufficient to show a compliance with section 4, so far as it pertains to the recorder's office; but there is no certificate and no proof that the affidavits were filed for record with the justice of the peace, or entered upon his docket, as required by that section, except it appears that the affidavits were sworn to before the same justice of the peace, or at least one of the same name, as the one upon whose docket the mortgage was entered. The levy in question was made at a time when the mortgage lien depended upon the validity of the extension. The controlling question in the case is whether the extension of a chattel mortgage debt is valid without a compliance with that part of section 4 requiring the affidavit to be filed with a justice of the peace and entered upon his docket.

It is expressly provided in section 1 of our Chattel

Mortgage Act (J. & A. ¶ 7576), that no such mortgage shall be valid as against the rights and interests of any third person where the possession of the property remains with the mortgagor unless the instrument is acknowledged and recorded as thereinafter directed. Section 2 (J. & A. ¶ 7577), provides for acknowledging before a justice of the peace, or other officer named; and section 3 (J. & A. ¶ 7578) for the entry of the memorandum thereof on his docket. Section 4 (J. & A. ¶ 7579) requires the instrument, when acknowledged as provided by the act, to be admitted to record by the recorder of the county, and declares that thereupon, if bona fide, it shall be good and valid from the time it is filed for record until the maturity of the entire debt, or obligation, "or extension thereof made as hereinafter specified"; then follow provisions for extension of the chattel mortgage debt by filing affidavits, as hereinbefore mentioned, in the office of the justice of the peace, and the provision that the affidavit be recorded by the recorder and entered upon the docket of said justice of the peace, and that thereupon the mortgage lien originally acquired shall be continued and extended, etc. It is so well settled in this State that noncompliance with the substantial provisions of the act in regard to acknowledging and recording chattel mortgages makes the instrument void as to third persons, that it is unnecessary here to cite and discuss the cases. We see no reason to doubt that the rule applies equally to the requirements of the act as to the filing and record of the affidavit evidencing an extension. It is not a question on the present record of the failure of the justice of the peace or recorder to make the proper entry of record because there is no evidence showing, or tending to show, that the affidavit was filed with the justice of the peace. The fact that it was sworn to before him is no more evidence that it was filed with him for record for entry on his docket than would be the fact that it was

sworn to before the circuit clerk (*ex officio* recorder) that it was filed in his office for record. It may have been sworn to before the justice of the peace at his office and entered on his docket, or it may have been sworn to before him at some remote part of the county where he happened to be at the time. It was incumbent on the claimant to show that he had a valid lien under the Chattel Mortgage Act which required proof that the affidavit of extension had been filed with the justice of the peace in compliance with the act. We therefore hold that the evidence did now show that the claimant had a right to the property superior to that of the execution creditor. The court therefore erred in entering judgment in favor of the claimant, and it must be reversed. But it might appear on another trial that the instrument was in fact filed with the justice of the peace and entered on his docket. We therefore remand the cause and discuss other errors assigned and argued by appellants.

The difficult question so presented is whether a mortgage of domestic animals covers their increase though silent as to such increase. The mortgage in the present case described, among other chattels, "6 Red Milk cows ranging from three to six years old." It seems only one of these 6 cows is among the property here in dispute, and that is said by appellants to be a spotted cow. The others are young cattle, the increase of said 6 cows. The evidence is not so clear as it should be as to the description of the original 6 cows, and whether the one that still survives might or might not be fairly designated as a "red cow"; but assuming that 6 cows were fairly described in the original mortgage, the question arises whether their increase was, as matter of law, covered by the description in the mortgage, which did not expressly mention the increase of the animals mortgaged. We do not find the question discussed in any opinion of our Supreme Court in which chattel mortgages are considered; but

it was decided by the Appellate Court of the third district in *Gundy v. Biteler,* 6 Ill. App. 510. In that case a mare was mortgaged while with foal and afterwards the colt was sold to a third party. The mortgagee brought replevin, and the court said:

"When live stock is mortgaged, its natural increase becomes subject to the mortgage. Hilliard on Mortgages, 420. This was the rule of the civil law, and by universal acknowledgment has become a part of the law of England and the United States. Herman on Chattel Mortgages, 86."

It was said in *Northwestern Nat. Bank v. Freeman,* 171 U. S. 620:

"Under the rule that the incident follows the principal, a mortgage of domestic animals covers the increase of such animals, though it be silent as to such increase. This court said in *Arkansas Valley Land & Cattle Co. v. Mann,* 130 U. S. 69, by Mr. Justice Harlan   *   *   *   'according to the maxim, *partus sequitur ventrem,* the brood of all tame and domestic animals belongs to the owner of the dam or mother.' 2 Bl. Com. 390. See also *Pyeatt v. Powell* (C. C. A.), 10 U. S. App. 200."

It is said in 3 C. J. 22:

"By virtue of the maxim, *partus sequitur ventrem*— the offspring follows the dam—the general rule of law is that the offspring of all tame and domestic animals belongs to the owner of the dam or mother, and such ownership continues until divested by some contract, express or implied. Generally the rule just stated includes the increase of the increase *ad infinitum.*"

We find in *Hazelbaker v. Goodfellow,* 64 Ill. 238, 242:

"It seems to be a general rule that the offspring of all animals, as well as the growth and increase of property, follows the ownership of the property itself. Hence, unless there is some agreement to the contrary, the increase of all domestic animals belong to the owner of the dam."

We do not find *Gundy v. Biteler* cited in any later

decision of the Supreme or Appellate Courts of this State, but it is cited in the notes in 46 Am. Dec. 715; 54 Am. Dec. 585; 109 Am. St. Rep. 523; 122 Am. St. Rep. 386, and in 14 L. R. A. (N. S.) 433. It will be seen on referring to these several notes that there is a great diversity of authority on the subject in the American State courts. It has been held in several States that the mortgage does not cover the increase of domestic animals, because in those jurisdictions, by statute or otherwise, the mortgage is held not to convey the title to the mortgagee, but simply to create a lien on the property described, and the cases can be somewhat distinguished on that line. The mortgage in the present case is in the usual form, using the words "grant, sell, convey and confirm" to indicate the title transferred from the mortgagor to the mortgagee.

We think chattel mortgages of this form should be held to transfer the legal title of the property described to the mortgagee at the time of delivery. This court said in *Brass v. Green,* 113 Ill. App. 58, 60:

"The mortgage vested the legal title of the chattel in the mortgagee, subject to conditions expressed therein. In this regard the mortgage is somewhat similar to an alienation of chattels personal, by deed, a method recognized by the common law."

In *Illinois Trust & Savings Bank v. Alexander Stewart Lumber Co.,* 119 Wis. 54, 94 N. W. 777, the court said:

"It is elementary that a mortgagee of chattel property holds the legal title thereto, but nevertheless, till default and actual possession of the property in himself, his interest, as against the mortgagor, or any person claiming under him, is special. It is limited to the amount of the mortgage indebtedness. The general property and the equitable title being in the mortgagor, or those claiming under him, the mortgagor may sell the mortgaged property and convey a good title thereto, subject to the mortgage. Such title is

equitable in character, to be sure, but it is of sufficient dignity to be regarded as a general property right, good as against the whole world except as to the special interest of the mortgagee, which, till it becomes absolute, may be extinguished by the owner of the general property by payment of the mortgage indebtedness.''

In *Peter Barrett Mfg. Co. v. Wheeler*, 212 N. Y. 90, 105 N. E. 811, it is said:

''In this State a chattel mortgage is a present transfer of the title to the property mortgaged by it, defeasible by the payment of the sum or instrument it is given to secure. In default of performance by the mortgagor the title of the mortgagee becomes absolute; the mortgagor, however, possessing the equity of redemption.''

In 6 Cyc. 985, a chattel mortgage is defined as:

''A transfer of the *title* to personal property as security for the payment of money, or performance of some other act, and subject to the condition that if the transferrer performs the specified act, title shall revest in him.''

There are Illinois cases that may be read in support of the contention that the title to chattels mortgaged does not vest in the mortgagee until condition broken, or until the mortgagee takes possession of the property, notably, *Barchard v. Kohn*, 157 Ill. 579, 585; *McConnell v. People*, 84 Ill. 583; *Whittemore v. Fisher*, 132 Ill. 243, 246; *Simmons v. Jenkins*, 76 Ill. 479, 481; *Larmon v. Carpenter*, 70 Ill. 549. In most of these cases the court was considering the title to the chattels mortgaged after condition broken, and in saying that the title became absolute in the mortgagee on that event inferentially said that it did not pass till condition broken, or as stated in some cases, till possession taken by the mortgagee; but we do not understand that the common-law rule so clearly expressed in *Illinois Trust & Savings Bank v. Alexander Stewart Lumber Co., supra*, and in other authorities above

cited, is directly denied. The mortgagor, of course, retains a property right in the chattels, and this holds even after foreclosure and sale, and entitles him to an accounting from the mortgagee and payment of any surplus after satisfying the debt and costs; but before condition broken it would seem that the legal title is in the mortgagee. We do not see how it can consistently be said that between the time of the delivery of the mortgage and the condition broken it is in the mortgagor and the default of the mortgagor and possession taken by the mortgagee in some way works a transfer of the legal title. It seems more reasonable to say that the legal title passed by the delivery of the instrument purporting to transfer it and not by some act or default of the parties afterwards.

We therefore conclude that in the present case the legal title to the cows mortgaged, or such of them as were sufficiently described in the mortgage, passed to the mortgagee on the delivery of the instrument, and that their increase after that time became subject to the mortgage.

Appellants contend that this is not a proper action in which to try the rights of the respective parties to the property in question; that each may have a property right in the chattels, and that only the right of possession is in dispute. It has long been recognized as the proper proceeding in contests like this between mortgagees and execution creditors. (*Harlow v. Birger,* 30 Ill. 425; and *Sellers v. Thomas,* 185 Ill. 384.)

Appellants argue that appellee could not recover unless he proved a demand on the sheriff before he commenced his action, and say the rule in replevin should be applied. We do not take that view of the law. The statute prescribes the form and manner of notifying the sheriff, which requirement was literally complied with, and we hold no other demand was necessary. There was, however, proof showing, or tend-

ing to show, a verbal demand before service of the notice required by the statute.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*