## Ellen M. Talty, Appellant, v. Frank Schoenholz, Sheriff, Appellee.

## Gen. No. 7,030.

1. SALES—*definition of "sale."* A "sale" is a transmutation of property from one man to another in consideration of some price or recompense of value; a transfer of the absolute or general property in a thing for a price in money; the passing of the title and the possession of any property for money which the buyer pays or promises to pay.

2. WORDS AND PHRASES—*"transfer."* A "transfer" is the act by which the owner of a thing delivers it to another person, with the intent of passing the rights which he has in it to the latter.

3. ASSIGNMENT—*definition of "assignment."* An "assignment" is a transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of any estate or right therein.

4. FRAUDULENT CONVEYANCES—*what is meaning of "sale," "transfer" and "assignment" in Bulk Sales Act.* The terms "sale," "transfer" and "assignment" in the Bulk Sales Act (Cahill's Ill. St. ch. 121a, ¶¶ 1-3) are used in their well-known legal signification, and mean an absolute sale where money is paid or promised and the title passes to the purchaser.

5. FRAUDULENT CONVEYANCES—*what was purpose of Bulk Sales Act.* The purpose of the Bulk Sales Act (Cahill's Ill. St. ch. 121a, ¶¶ 1-3) was to prevent sales of stocks of goods in bulk without first giving the creditors of the vendor opportunity to protect themselves.

6. FRAUDULENT CONVEYANCES—*transactions to which Bulk Sales Act applies.* The terms of the Bulk Sales Act (Cahill's Ill. St. ch. 121a, ¶¶ 1-3) are specific and will not be construed to apply to any transactions which do not clearly come within the provisions.

7. FRAUDULENT CONVEYANCES—*chattel mortgage as not within terms of Bulk Sales Act.* A chattel mortgage is not within the terms of the Bulk Sales Act (Cahill's Ill. St. ch. 121a, ¶¶ 1-3).

8. CHATTEL MORTGAGES—*what constitutes sufficient delivery.* Anything which clearly manifests the intent of the maker of a chattel mortgage and the person to whom it is delivered that the instrument shall presently become effective, and that the maker loses all control over it and that, by it, the person to whom it is made becomes possessed of the estate, constitutes a sufficient delivery.

9. CHATTEL MORTGAGES—*when valid delivery and acceptance accomplished.* Where there was a previous agreement to execute a

chattel mortgage and it was executed in accordance with that agreement and based upon a valuable consideration and was filed for record by the mortgagor with directions that it be mailed to the mortgagee after being recorded, and was so mailed and was received and accepted by the mortgagee, there was a valid delivery and acceptance though the mortgagee did not know it was to be executed on that day.

10. FRAUDULENT CONVEYANCES—*immateriality of execution of other instruments upon question of validity of chattel mortgage.* Upon the question of the validity of a chattel mortgage, it is immaterial that other instruments were executed at about the same time, except as they lend color to the one in question, and it may be valid though the others are fraudulent.

11. FRAUDULENT CONVEYANCES—*when chattel mortgage valid.* Where a mother had paid large sums of money for her son and was liable for the payment of others and had no security for any of them and, in compliance with her demand, a chattel mortgage was executed, delivered and accepted before judgment was rendered on any other indebtedness, it was valid and became a first lien on the property.

12. FRAUDULENT CONVEYANCES—*matter for adjustment between chattel mortgagee and mortgagor.* The fact that some of the property covered by a chattel mortgage was sold or consumed by the mortgagor before foreclosure is merely a matter for adjustment between the mortgagee and the mortgagor as they see fit.

13. CHATTEL MORTGAGES—*when property replevied from sheriff by mortgagee properly ordered returned.* Where certain property not covered by a chattel mortgage was levied upon by the sheriff along with property covered by the mortgage and all was replevied by the mortgagee, the court properly ordered the return of that not covered by the mortgage.

Appeal from the Circuit Court of Lee county; the Hon. HARRY EDWARDS, Judge, presiding. Heard in this court at the October term, 1921. Reversed and remanded. Opinion filed February 23, 1922.

H. A. BROOKS, for appellant.

M. A. STIVER, R. W. BESSE and CLYDE SMITH, for appellee.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellee, Frank Schoenholz, as sheriff of Lee

county, levied upon certain personal property under three executions against Peter F. Talty. The appellant, Ellen M. Talty, began an action of replevin in the circuit court of Lee county against appellee, claiming that she was the owner of the property levied upon, by virtue of a chattel mortgage to her from Peter F. Talty. Upon a hearing before the court without a jury there was a finding for appellee on the grounds that the chattel mortgage was fraudulent as to creditors for the reason that the Bulk Sales Act was not complied with, and for the further reason that the mortgage was not delivered and accepted. From the judgment rendered upon that finding this appeal was prosecuted.

The evidence shows that appellant, Ellen M. Talty, was the mother of Peter F. Falty. She had signed several notes as security for her son, several of which she had been required to pay and they had never been repaid to her by her son. On October 12, 1920, Peter F. Talty executed a chattel mortgage to appellant for $6,000 on certain farm machinery, horses, cows, hogs, corn, hay, and other personal property, as security for this indebtedness.

The first question is whether this chattel mortgage was in fact a sale, transfer or assignment of personal property and was void as to creditors because the Bulk Sales Act was not complied with. Our attention has not been called to any case in which this question has been passed upon by the courts of this State, but it has been passed upon by the courts of other States. Section 1 of the Bulk Sales Act (Hurd's Rev. St. 1919, page 2671, Cahill's Ill. St. ch. 121a, ¶ 1) provides that a sale, transfer or assignment, in bulk, of the major part, or the whole, of a stock of merchandise or other goods and chattels of the vendor's business, otherwise than in the ordinary course of trade, shall be fraudulent and void as against creditors unless the vendee shall, at least 5 days before the sale,

receive a complete list of creditors of the vendor and shall mail notice to them as therein provided. It is conceded that no notice was given before the chattel mortgage was executed.

The holdings in this State are uniform as to the kind of a title which the mortgagee takes under a chattel mortgage. In *Rhines v. Phelps,* 8 Ill. (3 Gilm.) 455, decided in 1846, it was held that a mortgage of personal property is in the nature of a pledge and conditional sale, to become absolute and vest the thing mortgaged, without redemption, upon condition broken in the mortgagee. Until a forfeiture has thus accrued, the mortgagee has only a lien upon the pledge for the security of his claim against the mortgagor and he would be liable in damages if he were to sell the same or otherwise convert it to his own use. In *Pike v. Colvin,* 67 Ill. 227, it was held that until a breach of the condition of a chattel mortgage, the mortgagor holds a contingent interest in the property that is liable to levy and sale on execution or attachment. But after the maturity of the debt, or failure of the condition upon which the mortgagor may retain possession, the mortgagee has the right to reduce the same to possession and, having done so, he has the legal right to retain it and an execution or attachment cannot deprive him of that right. In *Durfee v. Grinnell,* 69 Ill. 371, it was held that a chattel mortgage is but a conditional sale, and when the mortgagor fails to perform the condition, the title to the mortgaged property, so far as it is held by the mortgagor, vests in the mortgagee. When possession is taken in accordance with the terms of the mortgage, the title passes, even though the debt be not then due. The fact that the mortgagee is required to sell the property and render the surplus, after payment of the debt, to the mortgagor, will not prevent the title from vesting in the mortgagee as purchaser. To the same effect is *Simmons v. Jenkins,* 76 Ill. 479; *O'Neil*

*v. Patterson & Co.*, 52 Ill. App. 26; *Frankenthal v. Meyer*, 55 Ill. App. 405; *Reebie v. Brackett*, 109 Ill. App. 631; *Callaghan v. American Trust & Savings Bank*, 196 Ill. App. 102. In *Barchard v. Kohn*, 157 Ill. 579, it was held that the naked legal title which vests in the mortgagee of chattels, after condition broken, is not an absolute and exclusive ownership, but the right of the owner still remains with the mortgagor to a certain extent. Our attention is called to *Brass v. Green*, 113 Ill. App. 58, and *Van Zele v. Cleaveland*, 208 Ill. App. 387, and it is contended that these cases hold that the legal title passes by the delivery of the chattel mortgage purporting to transfer it, and not by some act or default of the parties afterwards. In the *Van Zele* case, on page 395, it is said: "The mortgagor, of course, retains a property right in the chattels, and this holds even after foreclosure and sale, and entitles him to an accounting from the mortgagee and payment of any surplus after satisfying the debt and costs." When these cases are read in connection with the other cases decided by the Supreme Court it will be found that under the weight of authority the legal title which passes is subject to certain limitations placed upon it, and in so far as the two cases last above cited hold otherwise, such holding is not in accord with the weight of authority in this State.

On the other hand, a "sale" is a transmutation of property from one man to another in consideration of some price or recompense of value. II Blackstone 446. It is a transfer of the absolute or general property in a thing for a price in money. Benjamin on Sales, sec. 1. A "sale" is the passing of the title and the possession of any property for money which the buyer pays or promises to pay. *People v. Law and Order Club*, 203 Ill. 127. The word "sale" had a well-defined legal signification and, in the absence of anything to the contrary, it will be assumed

that the word is intended to have its usual significa-tion. *Siegel v. People,* 106 Ill. 89.  A "transfer" is defined by Bouvier as "the act by which the owner of a thing delivers it to another person, with the in-tent of passing the rights which he has in it to the latter."  The same authority defines an "assign-ment" as "a transfer or making over to another of the whole of any property, real or personal, in pos-session or in action, or of any estate or right therein."  The terms, "sale," "transfer" and "assignment" in the Bulk Sales Act are used in their well-known legal signification.  They do not mean a pledge or security for a debt, but mean a transfer of title from one per-son to another, in fact they mean an absolute sale where money is paid or promised and where the title passed to the purchaser.  The purpose of this statute was to prevent sales of stocks of goods in bulk with-out first giving the creditors of the vendor an oppor-tunity to protect themselves against the sale.  The terms of the statute are specific and will not be con-strued to apply to any transactions which do not clearly come within the provisions.  In order to hold. that a chattel mortgage comes within the terms of the act, it would be necessary to say in the language of the act that a chattel mortgage is a sale, transfer or assignment of personal property.  To so hold would be contrary to the weight of authority in this State, which is to the effect that a chattel mortgage is but a conditional sale and operates as a lien or security for money due.  The trial court was in error in hold-ing the chattel mortgage was void because the Bulk Sales Act was not complied with.

The holdings in other jurisdictions on this question are not uniform, but the weight of authority is that a chattel mortgage does not come within the provi-sions of the Bulk Sales Act.  The cases so holding are as follows: *Des Moines Packing Co. v. Uncaphor,* 174 Iowa 39, 156 N. W. 171; *Daniels v. Pacific Brewing*

& Malting Co., 86 Wash. 416, 150 Pac. 609; Hannah
& Hogg v. Richter Brewing Co., 149 Mich. 220, 12
L. R. A. (N. S.) 178, 112 N. W. 713; Symons Bros. &
Co. v. Brink, 187 Mich. 43, 153 N. W. 359; 194 Mich.
389, 160 N. W. 638; Noble v. Ft. Smith Wholesale
Grocery Co., 34 Okla. 662, 127 Pac. 14; Mills v. Sul-
livan, 222 Mass. 587, 111 N. E. 605; Farrow v. Farrow,
136 Ark. 140, 206 S. W. 134; Avery & Sons v. Carter,
18 Ga. App. 527, 89 S. E. 1051; Schwartz v. King
Realty & Investment Co., 94 N. J. L. 134, 109 Atl. 567;
Wasserman v. McDonnell, 190 Mass. 326, 76 N. E.
959. To the contrary are Linn County Bank v. Davis,
103 Kan. 672, 175 Pac. 972; Beene v. National Liquor
Co. (Tex. Civ. App.), 198 S. W. 596.

The next question for determination is whether the
chattel mortgage was delivered to and accepted by the
appellant before the lien of the judgment creditors at-
tached. The evidence shows that between February
28, 1920 and October 5, 1920, appellant signed, as se-
curity for Peter F. Talty, notes amounting to over
$11,000. She had asked him on several occasions for
mortgage security for these notes and he had prom-
ised her to execute a mortgage but had neglected to
do so. The mortgage was executed October 12, 1920,
was filed for record October 13, 1920, and after it was
recorded it was mailed to the appellant. The three
judgments on which levies were made are as follows:
October 15, 1920, judgment in favor of Herman Matt-
son for $3,376; November 4, 1920, judgment in favor
of the State Bank of Sterling for $1,940.94; November
3, 1920, judgment in favor of the State Bank of Ster-
ling for $898.72.

The contention of appellee that the mortgage was
never delivered or accepted is based upon the fact
that on the day the mortgage was executed and re-
corded the appellant was in Chicago and did not know
it was to be executed on that day. Peter F. Talty
went to Dixon to the office of his attorney and had

the mortgage drawn. He then executed it and filed it for record, directing it to be mailed to his mother after it had been recorded. No particular form or ceremony is necessary to constitute a delivery. It may be by act without words, or by words without acts, or by both. Anything which clearly manifests the intent of the maker and the person to whom it is delivered, that the instrument shall presently become effective, and that the maker loses all control over it, and that, by it, the person to whom it is made becomes possessed of the estate, constitutes a sufficient delivery. The very essence of the delivery is the intention of the party. It was not necessary that the instrument be delivered actually to the appellant, if it was delivered to a third party for her benefit, and with the intent to protect and secure her, that would constitute a sufficient delivery. *Bryan v. Wash,* 7 Ill. (2 Gilm.) 557; *Creighton v. Roe,* 218 Ill. 619; *Latshaw v. Latshaw,* 266 Ill. 45; *Johnson v. Fulk,* 282 Ill. 328; *Jones v. Schmidt,* 290 Ill. 97; *Deitz v. Deitz,* 295 Ill. 556. It has been held that the recording of an instrument by the maker is prima facie evidence of its delivery. *Sargent v. Roberts,* 265 Ill. 210; *Sellers v. Rike,* 292 Ill. 469. There was an agreement to execute the mortgage. It was executed in accordance with that agreement. It was based upon a valuable consideration. The mortgage was filed for record. The mortgagor parted with all control over it. He intended to deliver it. It was mailed to the appellant. She received and accepted it. All of these acts were sufficient to prove a delivery by the mortgagor and an acceptance by the appellant.

Appellee contends that the mortgage was a fraud and was a part of a general plan to hinder and delay the creditors of Peter F. Talty, and that in furtherance of this plan other mortgages were executed, about the same time as this mortgage was executed, by Peter F. Talty and by his brother, which mort-

gages were a fraud as to creditors. It makes no difference what other instruments were executed on or about the same date of this mortgage, unless it be for the purpose of lending color to this transaction. Even though other instruments might have been fraudulent, this instrument might be valid. It is undisputed that appellant had paid out large sums of money for her son and that she was liable for the payment of other large sums. She had no security for any of them, and in compliance with her demand the mortgage in question was executed, delivered, and accepted before judgment was rendered on any other indebtedness. In all probabilities the giving of this mortgage was the reason for taking the judgments in question. Appellant had a right to take security for her indebtedness and if she took it for a bona fide debt before there was any valid lien on the property mortgaged, her mortgage became a first lien and appellee will not be heard to complain.

The evidence shows that some of the property covered by the mortgage was sold or consumed by Peter F. Talty before the foreclosure. If appellant had a valid lien upon the property consumed or sold, that was a matter between her and her son to adjust as they might see fit.

There were certain farm implements which were not covered by the mortgage which were levied upon by the sheriff and subsequently replevied by the appellant. She was not entitled to this property and the court properly ordered it returned by the appellant.

The judgment will be reversed as to all property covered by the chattel mortgage and the cause will be remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*