STUART v. ELK HORN BANK & TRUST COMPANY.

Opinion delivered April 3, 1916.

1. SALES—BULK SALES LAW—CONSTITUTIONALITY.—The Bulk Sales Law, Act No. 88, Acts of 1913, entitled "An Act to prevent fraudulent sales of stocks of merchandise," *held* to be a valid exercise of the State's police power, and intended to protect the rights of creditors from fraudulent sales of property upon which credit has been extended.

2. SALES—BULK SALES LAW—NOTICE TO CREDITORS.—The purchaser of an entire stock of merchandise, is required, under the Bulk Sales Law, to notify his vendor's creditors of his intended purchase, and he is not excused therefrom, by the fact that he assumed, and paid all the debts, of which he had knowledge.

3. SALES—BULK SALES ACT—LIABILITY OF PURCHASER.—The Bulk Sales Act does not make the person who fails to comply with its provisions liable for all the debts of the seller; it treats the sale as being void, and the purchaser as being a receiver, and his possession as being for the benefit of all the creditors. He is responsible

only for the property purchased; if he sells and gets enough to pay all the debts, he must pay them all; if the property is not sufficient for that purpose he must pay the creditors *pro rata* as any other receiver would do.

4.  SALES—BULK SALES ACT—LITIGATION—COSTS.—The purchaser of a stock of merchandise, who becomes liable to his vendor's creditors under the Bulk Sales Act, by asserting title to the property purchased, will be liable for the costs of resulting litigation.

Appeal from Clark Chancery Court; *James D. Shaver,* Chancellor; modified and affirmed.

*McMillan & McMillan,* for appellant.

1.  The Bulk Sale law is unconstitutional. Acts 1913, 326. It conflicts with article 2, section 2 and article 2, section 18, Declaration of Rights; 211 U. S. 295; 235 Ill. 40; 125 Am. St. 184, 189; 236 Ill. 157.

2.  Defendant, Stuart complied with the law, if constitutional. Am. Ann. Cas. 1915, C, p. 415; 140 Ga. 10; 78 S. E. 609; 45 L. R. A. (N. S.) 492; 70 Ore. 182; 138 Pac. 847. Stuart knew nothing of the bank's debt. It was not defrauded or in any way defeated in the collection of its debt. When he learned of the debt he offered to turn over to it all he had left of the stock, all of the fixtures, counters, shelving, etc.

3.  It was error to render judgment for all the costs against Stuart and the judgment is excessive.

*Hardage & Wilson, John H. Crawford* and *Dwight H. Crawford,* for appellee.

1.  The Bulk Sales Act is constitutional. 217 U. S. 466, 468; 263 Ill. 363; Ann. Cas. 1915 C. 411; 60 L. R. A. 947; 185 Mass. 18; 71 S. W. 50; 76 Conn. 515; 20 L. R. A. (N. S.) 160; 15 Okla. 477; 34 *Id.* 662; 46 L. R. A. (N. S.) 455; 49 *Id.* 600; 146 S. W. 874; 110 Me. 163; 177 Ind. 1; Ann. Cas. 1914 C. 708; 26 Ia. 438; 118 Wisc. 424; 145 Mich. 721; 99 Minn. 22; 93 Md. 431; 211 U. S. 489; 217 *Id.* 461; Ann. Cas. 1915 C. 414; 179 Ind. 509; 180 *Id.* 536; 146 N. W. 356; 49 Mont. 307; 86 N. J. L. 97; 70 Ore. 182; 145 Pac. 246, and many others.

2. Appellant did not comply with the act. He litigated the claim and lost and the costs were properly adjudged against him.

SMITH, J.   One J. M. Henderson owned a small retail grocery business in Arkadelphia and on November 17, 1914, made a bulk sale of his stock of goods and fixtures to appellant. The consideration was $200, of which $30 was cash, and the balance consisted of claims due creditors who had furnished goods amounting to $118.09, which appellant assumed, and an item of $25 for rent, and a telephone bill of $2.50, which appellant also assumed.

Appellant testified that the stock of goods invoiced $204 and was worth 60 per cent. of that amount and that the fixtures were worth $40. But there was evidence that this property was worth $300. Upon the consummation of the sale appellee sued appellant for the amount of its debt against Henderson, and recovered judgment for the debt with interest and costs amounting to $223.35, and, in addition, the court gave judgment against appellant for all costs of the receivership and of the suit.

On the date of the sale Henderson delivered to appellant an affidavit purporting to contain a list of his creditors and the amount due each of them. Of these creditors two lived in Arkadelphia, one in Texarkana, and three in Little Rock. Appellee's banking house was across the street and four or five doors east from Henderson's place of business, and appellant knew nothing of the bank's debt until after his purchase. It was shown that Henderson's debt to the appellee bank was due November 6, and when it was not paid Henderson applied for an extension, which was not granted because the terms upon which the extension was promised were never complied with. In these negotiations Henderson told the cashier of the bank that he might sell out his business, but he did not state positively that he would do so. It is insisted that as this conversation occurred more than ten days before the date of the sale that this information supplied the notice required by the Bulk Sales Act of the intention to sell, and it is urged that it should be so held

in view of the fact that appellant assumed and agreed to pay the debts of all the creditors of whom he had notice, and that neither Henderson's books nor his affidavit showed the bank to be a creditor and appellant could not, therefore, have given it notice. It is urged by appellant, not only that he substantially complied with the requirements of Act No. 88 of the Acts of 1913 entitled "An Act to prevent fraudulent sales of stocks of merchandise," and commonly known as the Bulk Sales law, but he also insists that the law is unconstitutional and he earnestly contends that it should be so held if it is to be so construed as to make him liable to appellee under the facts of this case.

(1)    We think the law is not unconstitutional. It appears from the briefs of learned counsel in the case that similar legislation has been enacted in nearly all of the states and by the Federal Government in the District of Columbia, and the appellate courts of nearly all these states have been called on to pass upon the constitutionality of the legislation. Many of these cases are cited in the briefs. In the early history of this legislation the courts do not appear to have been unanimous in upholding it. But our attention has not been called to any case holding the legislation unconstitutional since the opinion of the Supreme Court of the United States in the case of *Lemieux* v. *Young,* 211 U. S. 489. The necessity for such legislation is indicated by the fact that the Legislatures of nearly all the states have seen proper to enact it, and it has been pretty generally sustained as a valid exercise of the State's police power. The various acts on this question are not identical in their provisions, but they are all directed against the same evil, viz., the prevention of fraud in the sale and transfer of merchandise in bulk. Appellant attacks our statute upon the ground that it contravenes section 2, article 2, of our Constitution, which guarantees the right of acquiring, possessing, and protecting property; and also that it contravenes section 18 of the same article, which provides that the General Assembly shall not grant to any citizen, or

class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens. Similar provisions are contained in the constitutions of other states which have enacted this legislation, and it has been generally held by the courts of those states that the legislation does not contravene those constitutional provisions. It is pointed out that this legislation does not prevent the retail dealer who owes no debts from lawfully selling his entire stock without giving the required notice, and one may make a valid sale without such notice by paying his debts even after the sale is made, and that it is the insolvent and fraudulent vendors who are chiefly affected, and that the legislation was intended for the protection of creditors against sales by them of their entire stock at a single transaction and not in the regular course of business. It may be true that compliance with this law will defeat some sales which would otherwise be made and which would not be fraudulent if made; but any exercise of the State's police power operates to abridge in some measure the individual's freedom of action. Without reviewing the cases on this subject, or repeating the arguments made in upholding the law, we announce our conclusion to be that this legislation is a valid exercise of the police power, in that it is intended to protect the rights of creditors from fraudulent sales of property upon which credit was extended.

(2) Nor do we agree with appellant that he has substantially complied with the requirements of this act. The act provides that an inventory must be made before the sale, and must be preserved. No inventory here was made before the sale. The act also provides that the seller shall furnish a written list of the names and addresses of his creditors with the amount of the indebtedness due to each not less than ten days prior to the sale and delivery and payment; whereas the affidavit here was made on the day of the sale. It is also provided that ten days before taking possession of the bulk stock, or paying the money therefor, the purchaser shall notify personally, or by registered mail, every creditor whose name and ad-

dress is on said list, or of whom he has any knowledge, of the terms of the sale. Appellant admits that he did not comply with these provisions, but insists that he was not thereby made liable because he has assumed and paid all the debts of which he was advised, and that notice to these creditors, therefore, could have accomplished nothing, and that even though he had sent notice to the creditors of whom he had information, that would have profited appellee nothing, as its claim was not included in the list of creditors furnished appellant by Henderson. As sustaining his position appellant quotes from a note to the case of *Johnson* v. *Beloosky,* 37 Am. & Eng. Ann. Cas., p. 415, as follows:

"The Oregon statute providing that sales in bulk of merchandise shall be conclusively presumed to be fraudulent and void unless certain conditions are first complied with, was upheld in *Coach* v. *Gage,* 70 Ore. 182, 138 Pac. 847. The court, overruling the contention that the unintentional omission of the name of a creditor from the list furnished to the vendee was a failure to comply with the statute, held that such a construction of the statute would render it void as in violation of the due process clause of the Federal Constitution, saying: 'The act in question, in our judgment, imposes upon the purchaser (1) the duty to demand a written statement, under oath, of the vendor of the names and addresses of his creditors, and (2) upon the receipt of such list to notify the persons named therein of the proposed purchase. For an intentional breach of either of these duties, it was entirely competent for the Legislature by way of penalty for such breach, and to secure the faithful performance of such duty, to declare that their nonperformance should constitute conclusive evidence of fraud, and render the sale void as to creditors, but it is not in the power of the Legislature to make a breach of duty by the vendor evidence of fraud in the vendee. To hold the law means that an omission of the name of a creditor by the vendor without the knowledge of the vendee renders the transaction void as to him would be to hold that it was the intent of the Legislature to or-

dain that a fraud committed by the vendor upon the vendee by falsifying the list of creditors should be conclusively presumed to be the fraud of the person so defrauded and deceived. Such a construction would be so contrary to every principle of law and good morals that it is inconceivable that the Legislature intended it and would be such an arbitrary and unreasonable exercise of the police power as to amount to a taking of the vendee's property without due process of law. It is a rule of interpretation that, where a statute is open to two constructions, one of which will render it unreasonable and unconstitutional, while the other will harmonize with reason, justice, and constitutional prescriptions, the latter construction will be adopted.' In *International Silver Co.* v. *Hull,* 140 Ga. 10, 78 S. E. 609, 45 L. R. A. (N. S.) 492, a similar contention arising from the omission of the name of a creditor from the list furnished the vendee was considered, and it was held that such omission did not render the sale void under the Georgia statute.''

We can and do approve the reasoning of the Oregon court in construing the provisions of their statute, which are similar to our own; but what was there said is not applicable to the facts of this case. Here there was no list furnished for the time required by law, nor was the notice given as required by law to those creditors whose names were furnished. This failure is not excused by the fact that appellant assumed, and has paid, all those creditors of whom he had knowledge. The very purpose of the act is to give publicity to those who have the right to know of intended sales by insolvent debtors and to prevent clandestine and quickly made sales. It is highly probable that if notice is given for the time and in the manner required by the act to the creditors whose names are furnished, that persons interested, although not, in fact, notified, may learn, through commercial agencies or otherwise, of the debtor's contemplated action. It is true, of course, that all creditors may not become so advised, but the chances of fraudulent sales being committed will be greatly minimized if the law is complied with. The

law only requires of the purchaser that he comply with its provisions and, when he has done so, he is absolved from liability to any creditor who may not have received notice. Not having complied with the law appellant can not excuse his liability by showing that he knew nothing of appellee's claim.

(3) We do agree with appellant, however, in his contention that judgment was rendered against him for an excessive amount. The Bulk Sales Act does not make the person who fails to comply with its provisions liable for all the debts of the seller. It treats the sale as being void and the purchaser as being a receiver and his possession as being for the benefit of all the creditors. He is like any other receiver so far as his liability is concerned. He is responsible for the property purchased, but for that only. If he gets enough property to pay all the debts, he must pay them all. If the property is not sufficient for that purpose he must pay the creditors *pro rata* as any other receiver would do.

(4) After the loss of considerable time and effort appellant disposed of the property received for $290, and this appears to have been a very fair price for it. Of course, one who wrongfully takes possession of property and disposes of it is liable for its actual value, whether he receives its value or not when he disposes of it; but the property in question appears to have been disposed of advantageously, and it is improper to charge appellant with a greater sum than he received. There appears to have been due by Henderson on his goods the sum of $118.09, and $27.50 for rent of building and telephone. These items, with the debt of $200 due appellee, make a total indebtedness of $345.59. Each creditor, therefore, was entitled to be paid 83 per cent. of his indebtedness only, and appellee should, therefore, have had judgment for only 83 per cent. of its debt, or the sum of $166. The court below rendered judgment against appellant for all the costs and this action is questioned by him; but we think the court was correct in so assessing the costs. Had appellant conceded his liability as receiver and disposed

of the property accordingly, there would have been no litigation; but he did not do so. Upon the contrary, he asserted title as a purchaser, and this litigation resulted, and he must be charged with all costs except those of this appeal. The judgment in appellee's favor will be reduced to the sum of $166, and interest will be calculated thereon from the date of the bulk sale to appellant.