## SHEPTINE *v*. STATE.

### Opinion delivered March 25, 1918.

1. APPEAL AND ERROR—CONTINUANCE—ABSENT WITNESS.—Diligence must be shown where a continuance is sought on the grounds of an absent witness.

2. LARCENY—HOGS—SUFFICIENCY OF THE EVIDENCE.—The evidence held sufficient to sustain a conviction for the larceny of hogs.

3.  TRIAL—OPENING STATEMENT—CONCERNING INCOMPETENT TESTI-
    MONY.—Counsel for appellee in his opening statement referred
    to certain testimony which would be introduced. During the
    trial he offered the testimony, and upon objection, the testimony
    was excluded. Counsel then withdrew the testimony. *Held,*
    where counsel acted in good faith that no prejudice resulted from
    his remarks in the opening statement.

4.  CRIMINAL LAW—PRESENCE OF PROSECUTING WITNESS THROUGHOUT
    TRIAL.—Appellant was prosecuted for the larceny of the hogs of
    one D. The court permitted D. to remain in the court room
    throughout the trial. *Held,* the court's action would not call for a
    reversal in the absence of a showing that appellant had been
    prejudiced by the court's action.

5.  EVIDENCE—CRIMINAL TRIAL—REMARK MADE IN THE PRESENCE OF
    ACCUSED.—In a prosecution for the larceny of certain hogs, a
    remark is admissible in evidence, when made by a witness in
    the accused's presence, it appearing only that the accused could
    have heard the remark, had he been listening, and one witness
    testifying that the accused did hear it.

Appeal from Monroe Circuit Court; *Thomas C. Trimble,* Judge; affirmed.

*Lee & Moore,* for appellant.

1. The continuance should have been granted. The refusal was an abuse of discretion by the court. 42 Ark. 273.

2. The opening statements of the prosecuting attorney were highly prejudicial. 88 Ark. 581; 71 *Id.* 417; 66 *Id.* 16.

3. The demurrer to the evidence should have been sustained. It does not sustain the verdict.

4. It was error to permit John Davis to remain in the court room. 101 Ark. 156; 180 S. W. 275; 39 *Id.* 278. It was error to permit evidence as to Mack Powell's hogs. The withdrawal did not cure the error. 39 Ark. 278. See also 67 Ark. 234; 120 *Id.* 462.

5. The court erred in refusing instruction No. 2. 99 Ark. 333. Also in refusing Nos. 3 and 6, 7, 8 and 11.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1.   The continuance was properly refused.   Kirby's Digest, § § 2311, 6173.

2.   There was no error in the opening statement of the prosecuting attorney.   110 Ark. 318; 125 *Id.* 275; 84 *Id.* 119; 87 *Id.* 17; 131 Ark. 445; 130 Ark. 48.

3.   The evidence is ample to sustain the verdict.

4.   It was not error to permit Davis to remain in the court room.   Kirby's Digest, § 3142; 101 Ark. 155; 90 *Id.* 135; 77 *Id.* 603; 93 *Id.* 140.

5.   There was no error in the testimony of Jim Clements.   See cases cited, *supra.*

6.   Nor in Stone's testimony.

7.   There is no error in the refusal of instructions. Many of them are not the law.   The others charged the jury as to matters of fact.   The law was correctly given. Const., art. 7, § 23.

HART, J.   W. H. Sheptine prosecutes this appeal to reverse a judgment of conviction against him for the crime of grand larceny, charged to have. been committed by stealing eleven hogs belonging to John Davis.

(1)   It is first insisted by counsel for the defendant that the court erred in overruling his motion for a continuance on account of the absence of witnesses.   No showing was made of proper diligence exercised to secure the attendance of the absent witnesses and the court did not abuse its discretion in refusing to grant a continuance on that account.   *Hamer* v. *State,* 104 Ark. 606; *Jackson* v. *State,* 94 Ark. 169, and *Bevis* v. *State,* 90 Ark. 586.

(2)   The most serious question in the case and the one which has given us the greatest concern, is whether or not the evidence is legally sufficient to warrant the verdict.   The defendant, W. H. Sheptine, lived near Rowe on White river, in Monroe County, Arkansas.   He dealt in hogs and shipped them to market.   John Davis lived near him in the same county and on the same side of the river.   He had something like twenty-five or thirty head of hogs in one bunch that ran on the range near his place and Sheptine knew his hogs.   During the summer of 1917

Davis was gone from home three or four weeks driving wells. When he returned home he went to the woods to feed his hogs and eleven head of his large hogs were gone. His mark was a small crop and split in the right and a hole in the left ear. Davis asked him about his missing hogs, and the defendant told him that he had seen five or six head of them up by the Ramsey mill two or three days before. Davis made further inquiries and received word that his hogs might be down the river about twenty-five miles on the opposite side of the river to which they were accustomed to range. He went down there and found them near a pen built on the bank of the river. He called them and they knew him at once. A man by the name of Lockeridge was in charge of the hogs and refused to give them up, stating that he was taking care of them for Sheptine. In a little while Sheptine came along, and after talking to Lockeridge, was called to where the hogs were by Davis and admitted that he knew the hogs and that they belonged to Davis. Lockeridge was present but not directly engaged in the conversation between Davis and Sheptine. He was talking to another man, and after Sheptine admitted that the hogs belonged to Davis, he said: "This leaves me in a devil of a shape; they are the hogs that I have been feeding and Mr. Sheptine denies them." Davis found his hogs about the first of September and they had been gone since about the first of July. There were eleven head of the hogs and their ears had been cut off since Davis had last seen them. Sheptine had a hog boat down there, and this was the only hog boat on the river. He also had a pen built near his home up the river, which could be used in loading hogs into a boat. Davis reminded Sheptine while they were at the place where the hogs were found that he had told him a week or two before that he had seen the hogs up near Ramsey's mill. Davis then said: "According to Lockeridge's statement you could not have seen them up there a week or two before; for he says he has been feeding them a month or six weeks." Some time before the hogs were found, Lockeridge, Sheptine and two other per-

sons were down in the bottoms near where the hogs were found going to cut a bee tree. The two men with Lockeridge and Sheptine said that some hogs got up which had their ears cut off which were called "no-eared" hogs. Sheptine stated that these hogs belonged to him and Lockeridge. One of the witnesses testified that they were about fifty yards away from the hogs, and that the hogs had the same flesh marks and their ears cut off just as were the hogs found by Davis. He stated that they looked like the same hogs. The other witness identified some of the hogs found by Davis as being the hogs claimed by Sheptine.

On the other hand, the defendant stated that he had bought thirty head of hogs from Ed Howard up the river near his home; that these hogs were marked with a crop and an under half crop in each ear; that Howard had marked the hogs himself and that they were very heavily marked and on that account known as "no-eared" hogs; that he carried these hogs down the river and turned them loose in the range near the home of Lockeridge; that he supposed that Lockeridge was looking after these hogs; that he did not know that he was looking after Davis' hogs; that he carried the hogs down there in a boat and made no effort to conceal his acts; that he went in the night time because it was hot weather and the hogs could stand the trip better at night. He was corroborated by Ed Howard and by other persons who helped him to build the pen and to carry the hogs down there.

Inasmuch as in testing the legal sufficiency of the verdict the testimony must be viewed in the light most favorable to the State, we need not abstract the evidence adduced in his behalf at length. We think the evidence was legally sufficient to warrant the verdict. The jury might have inferred from it that somebody had taken the hogs of Davis, remarked them, carried them down the river twenty-five miles, and turned them into the range on the opposite side of the river. We also think the jury was warranted in finding that the defendant was the per son who did this. He knew well Davis' hogs and identi-

fied them at once as soon as he saw them by their flesh marks, although their ear marks had been changed. When the defendant admitted that the hogs belonged to Davis after he had looked at them, Lockeridge remarked that this left him in a devil of a fix. Davis heard this remark. The defendant said nothing, but it may also be inferred that he heard it. The defendant admitted that he carried some hogs down the river which were marked in a similar manner to Davis' hogs. No account is given anywhere in the testimony as to what became of these hogs. When all the facts and circumstances are considered together, the evidence adduced by the State, if believed by the jury, was sufficient to justify a verdict of guilty.

(3)   The prosecuting attorney in his opening statement to the jury stated that the defendant had not only changed the mark of the Davis hogs but had changed the mark of hogs belonging to Powell, which were also missing. An objection was made to this statement of the prosecuting attorney by the defendant. The court stated that he would instruct the jury that they would not be governed by anything that was not proved in evidence and deferred his ruling on the question of whether or not such evidence would be admissible until it was offered at the trial. During the progress of the trial the prosecuting attorney asked a witness about the Powell hogs and the change of their ear marks. The defendant objected to any answer in regard to the Powell hogs. The prosecuting attorney withdrew the question, and the court expressly told the jury that the defendant was charged with stealing the eleven head of hogs belonging to John Davis and that he could not be convicted of any other larceny. It is true the object of the opening statement is to give the jury an outline of the evidence to be introduced and that counsel have no right to rehearse facts which can not be introduced in evidence, but it is equally true that it is not always apparent whether or not the evidence stated will be competent or not. It would not be practical for the court to rule on the admissibility of all the evidence, while counsel are making their opening statements. The evi-

dence in question appears to have been offered in good faith. The prosecuting attorney, after objection was made to it, withdrew it and the court told the jury that it should not be considered in determining the guilt or innocence of the defendant. This had the effect to remove any prejudice to the rights of the defendant. *Coats* v. *State,* 101 Ark. 51.

(4)   It is next contended that the court erred in permitting Davis to remain in the court room during the trial. This was a matter in the sound discretion of the trial court. It does not appear from the record that the defendant was in any wise prejudiced by the action of the court. Hence the judgment will not be reversed on this account.

(5)   It is next insisted that the court erred in permitting a witness to state that Lockeridge said to him after Sheptine had admitted that the hogs belonged to Davis that this left him in a devil of a fix. Lockeridge was present when Davis found his hogs on the bank of the river near the pen which the defendant had erected. The defendant came up soon after the hogs were found and Lockeridge went off and talked with him for a short time. Davis then called the defendant to come and examine the hogs. The defendant, after examining them, admitted that they belonged to Davis. Then it was that Lockeridge stated to a man to whom he was talking that this left him in a devil of a fix; that they were the hogs he had been feeding and Sheptine had denied that they belonged to him. It is true that this remark was not made to Sheptine and that there is no direct proof that he heard it, but the witness testified that he could have heard it if he had been listening; and Davis, who was talking to Sheptine at the time, stated that he heard it. So the jury might have inferred that Sheptine heard it and the testimony was competent.

An instruction as requested by the defendant was as follows:

"If you find from the evidence that the defendant, Sheptine, carried some hogs and turned them loose on the

range near Lockeridge's house and that Lockeridge, under the belief that certain hogs he saw running at large on the range were the hogs that Sheptine had brought down there, fed them at intervals, and that afterwards the hogs were claimed by the prosecuting witness and taken by him, these facts are not sufficient to convict the defendant of larceny.''

The court refused to give this instruction as requested but modified it by adding at the end thereof the following:

''Unless you believe from the evidence, beyond a reasonable doubt, the hogs or some of them, carried and turned loose on the range near Lockeridge's house, was the property of John Davis, and carried there by the defendant with the felonious intent to steal them.''

The modification of the instruction is assigned as error. The instruction as requested by the defendant was open to the objection that it singled out evidence favorable to the defendant and altogether ignored the theory of the State. The theory of the State was that the defendant had taken the hogs of Davis, remarked them, carried them down the river twenty-five miles and turned them loose on the range on the opposite side of the river to which they had been accustomed to run. Hence the court properly modified the instruction.

Other assignments of error in regard to the refusal of instructions are pressed upon us for a reversal of the judgment, but we do not deem them of sufficient importance to discuss them separately. The instructions refused were either covered by instructions given by the court, or they were open to the objection that they singled out evidence or amounted to a comment by the court on the weight of the evidence. The court fully and fairly covered the respective theories of the parties in the instructions given to the jury, and we find no reversible error in the record.

The judgment will, therefore, be affirmed.