FARROW v. FARROW.

Opinion delivered October 28, 1918.

1. MORTGAGE—WHEN CREATED.—Where there is an indebtedness or liability between the parties, and a conveyance is intended to secure it, the transaction is a mortgage, whatever the language of the instrument may be.

2. FRAUDULENT CONVEYANCE—BULK SALES LAW—MORTGAGE.—A chattel mortgage covering a stock of merchandise, where the mortgagor remains in possession and has the usual right of redemption, creates a

lien only, and does not pass title, and is not a sale, exchange or assignment within the meaning of the Bulk Sales Law, and is therefore not within the inhibition of that statute.

3.  MORTGAGES—FUTURE ACQUISITIONS—VALIDITY.—A chattel mortgage covering a stock of merchandise which provided that it should apply to all future acquired stock that the mortgagor might have in his business is a valid lien against every person except subsequent purchasers and creditors acquiring a specific lien upon the property.

4.  CORPORATIONS—PREFERENCES BY INSOLVENT CORPORATIONS.—The enforcement of a chattel mortgage upon a stock of merchandise by the mortgagee taking possession, with the consent of the mortgagor, of the property covered by the mortgage was not a preference within Kirby's Digest, § 949, prohibiting preferences among creditors of insolvent corporations.

Appeal from Cross Chancery Court; *E. D. Robertson,* Chancellor; reversed.

### STATEMENT OF FACTS.

On the 11th day of January, 1917, P. B. Farrow brought suit in the chancery court against A. A. Farrow and others to foreclose a mortgage on a stock of goods given by A. A. Farrow to himself.

It appears from the record that on the 20th day of September, 1910, P. B. Farrow furnished to J. P. Farrow, his brother, $2,500 for the purpose of enabling the latter to purchase a stock of goods and conduct a mercantile business. J. P. Farrow failed to make a success of the business and in February, 1914, turned back to P. B. Farrow the stock of goods and fixtures of the mercantile establishment amounting in the aggregate to $2,618.50. On the 17th day of February, 1917, P. B. Farrow turned over the stock of goods and fixtures to A. A. Farrow, wife of J. P. Farrow, for the operation of a mercantile business to be known as Farrow's C. O. D. Store. On that date P. B. Farrow and A. A. Farrow entered into an agreement in writing as follows:

"That whereas, on the 20th day of September, 1910, J. P. Farrow entered into the mercantile and grocery business in the city of Wynne, Arkansas, together with P. B. Farrow of Panola County, Mississippi, under the firm name of Farrow's Variety Cash Store, and whereas

the said P. B. Farrow furnished the entire amount of money and capital for the purchase of stock and the setting up of said business, in the sum and amount of twenty-five hundred dollars ($2,500), and whereas, on the same day, September 29, 1910, as a guarantee by said J. P. Farrow that the money so invested by the said P. B. Farrow should earn the amount of 10 per cent. per annum, the said J. P. Farrow executed and delivered unto the said P. B. Farrow his promissory note, or written evidence of indebtedness for the sum of twenty-five hundred dollars ($2,500), bearing interest at the rate of 10 per cent. per annum, of date of September 20, 1910, and due and payable one year after date; that whereas after maturity of said note it was agreed by and between the said P. B. Farrow and the said J. P. Farrow that the said note of evidence of indebtedness should remain unpaid and be due upon demand of said P. B. Farrow; that whereas the said P. B. Farrow has, and does on this day, demand the payment in full of said note or evidence of indebtedness, and the said J. P. Farrow having this day paid and turned over to said P. B. Farrow the following property and amount, towit:

| | |
|---|---|
| One check on Bank of Wynne | $ 800.00 |
| Cash in hand | 1,200.00 |
| Furniture and fixtures | 347.50 |
| Mule, wagon and harness | 177.50 |
| Merchandise per bill rendered | 93.50 |
| | $2,618.50 |

and taken credit on this said last mentioned note on the amount of two thousand six hundred eighteen and 50/100 dollars ($2,618.50), which said amount is this day loaned A. A. Farrow for the operation and carrying on of Farrow's C. O. D. Store; and the said A. A. Farrow does execute and deliver unto the said P. B. Farrow her promissory note of even date herewith for the amount of two thousand six hundred eighteen 50/100 dollars ($2,618.50), bearing interest at the rate of 10 per cent.

per annum from date until paid, and due and payable three years after date.

"Now, for and in consideration of the sum of one dollar and the consideration above mentioned, it is understood and agreed by and between the said A. A. Farrow and the said P. B. Farrow that the entire property of the said Farrow's C. O. D. Store, consisting of stock invoiced above mentioned, furniture, fixtures, horses, mules and wagons, together with all other property at the business houses of the said Farrow's C. O. D. Store, on Front Street, in the city of Wynne, Arkansas, shall be and remain the property of the said P. B. Farrow, to secure said note, together with all the interest the said A. A. Farrow has or may have therein, and that said P. B. Farrow may declare said note due and payable at his option and demand and may enter upon and take possession of said property for the purpose of enforcing the payment of said note and amount now due, and that such may be done either at public or private sale at the option of the said P. B. Farrow; the amount over, however, after the payment and discharge of said note, to be paid to the said A. A. Farrow.   The said A. A. Farrow is to conduct said business in all things in good faith for the profit of the said business and to keep all moneys and property in the name of the Farrow's C. O. D. Store."

This instrument was duly acknowledged by A. A. Farrow on the same day and filed for record as a mortgage in the recorder's office.   Pursuant to the agreement, A. A. Farrow executed to P. B. Farrow her note in the sum of $2,618.50.   She also took possession of the property and began the operation of a retail store in the city of Wynne, Arkansas,   Counsel for the respective parties have agreed that it was the intention of P. B. Farrow and Mrs. A. A. Farrow under the agreement that any and all of said stock of goods or fixtures might be sold in due course of business and be replaced by other goods or fixtures which might also be sold in due course of business; that goods were sold and others purchased under this agreement; that a considerable quantity of goods re-

mained on hand on the 20th day of December, 1916. Mrs. A. A. Farrow was unable to meet her obligations and had failed to pay P. B. Farrow the amount of the note due him, as above set forth. Upon demand of P. B. Farrow, Mrs. A. A. Farrow turned all the goods and fixtures on hand over to him to be applied in satisfaction of his mortgage debt. Then Mayo & Robinson, creditors of the firm, filed a suit in attachment against A. A. Farrow and caused the attachment to be levied upon part of said goods. On the following day P. B. Farrow filed this suit in the chancery court against A. A. Farrow, Mayo & Robinson and R. A. Martin, sheriff of the county. The complaint alleges that the instrument above referred to and set forth is a mortgage. The prayer of the complaint is for a foreclosure of the mortgage and the application of the proceeds towards the satisfaction of the debt of the plaintiff and that the defendants be enjoined from further interfering with the plaintiff in the foreclosure of the mortgage. Mayo & Robinson and other creditors of A. A. Farrow intervened in the action, alleging that the execution of the mortgage by A. A. Farrow to P. B. Farrow on the stock of goods was fraudulent and that the transfer of said stock of goods by A. A. Farrow to P. B. Farrow is in violation of the provisions of the Bulk Sales Law. During the pendency of the proceedings P. B. Farrow, on his own motion, was appointed receiver of the stock of goods and fixtures. They were sold for an amount less than the debt due either to P. B. Farrow or the other creditors. The court found that P. B. Farrow retained such an interest in the stock of goods and fixtures as made him liable to all of the interveners for the amounts of their several claims. A decree was accordingly entered, holding the receiver accountable to the interveners for all the goods, wares, merchandise, and fixtures which came into his hands by virtue of Mrs. A. A. Farrow turning over to him the mortgaged property. The plaintiff has appealed.

*Killough, Lines & Killough,* for appellant.

1.    The mortgage on stock of goods was valid.    97 Ark. 57; 25 L. R. A. (N. S.) 937; 52 Ark. 385; 49 *Id.* 279; 41 *Id.* 186.

2.    The mortgage covering after-acquired property was valid.    187 S. W. 927; 18   *Id.* 609; 97 Ark. 57; 108 *Id.* 162; 35 *Id.* 304-322.

·3.    The bulk sales law has no application.    12 R. C. L. 525; 25 L. R. A. (N. S.) 758; 12 R. C. L. 26; 12 L. R. A. (N. S.) 178, note; 46 L. R. A. (N. S.) 455, note; 2 *Id.* 341; 12 ·Am. Cas. 344, note; 9 *Id.* 332; 12 L. R. A. (N. S.) 178, note; 46 *Id.* 455, note; 2 *Id.* 341.

4.    The mortgage was valid between the parties and before any liens were created by others.    Appellant took possession under the mortgage and it became valid as to all parties.    There is no proof of fraud or improper motives.    The mortgage was duly recorded and notice to every one.

*S. W. Ogan,* for Mayo & Robinson; *J. C. Brookfield,* for Iowa City State Bank.

1.    The entire instrument was a mere partnership contract—not a mortgage.    It was fraudulent as to creditors.    88 Ark. 56.

2.    If a mortgage, Mayo & Robinson are entitled to superiority.    97 Ark. 57.

*Chas. E. Robinson,* for interveners.

1.    The transaction is within the bulk sales law, because (1) the mortgage conveyed the stock and fixtures in bulk and possession was taken thereunder, and (2) the stock and fixtures were delivered by A. A. Farrow in payment of her debt to P. B. Farrow, which was made a sale under the bulk sales act.    46 L. R. A. (N. S.) 455, 459; 23 Mont. 425; 12 L. R. A. (N. S.) 178; 112 Ark. 187; 9 A. & E. Ann. Cas. 331; 193 Mass. 106; 163 Ind. 422; 93 Md. 432; 40 Wash. 566.

HART, J., (after stating the facts).    The decision of the court below proceeded upon the theory that, under

the agreement between P. B. Farrow and Mrs. A. A. Farrow, the former retained such an interest in the goods and fixtures as to render him liable to the interveners for the amount of their claims. In other words, the chancellor seems to have been of the opinion that the instrument in question constituted a partnership agreement between P. B. Farrow and Mrs. A. A. Farrow. We do not think this position is sound. It is apparent from the language of the instrument that the parties intended the instrument to be a mortgage for the security of the purchase money of the goods and fixtures. It expressly states that the property is intended to secure the note given by Mrs. A. A. Farrow to P. B. Farrow for the purchase price of the goods. It also provides that, in the event the note is not paid, P. B. Farrow may take possession of the property for the purpose of enforcing the payment of the note and that he may sell the property, either at public or private sale, for that purpose; and that the amount remaining after the payment of said note is to be paid to Mrs. A. A. Farrow. Where there is an indebtedness or liability between the parties, and a conveyance is intended to secure it, the transaction is a mortgage, whatever the language of the instrument. *American Mortgage Co.* v. *Williams,* 103 Ark. 484. Moreover, the interested parties here have so treated the transaction. P. B. Farrow in his complaint seeks the foreclosure of the instrument as a mortgage. The interveners in their intervention call the instrument a chattel mortgage, and assert that its execution was fraudulent. They also alleged that its execution and the proceedings under it were in contravention of the provisions of the Bulk Sales Law and therefore void.

Having held that the instrument is a mortgage, we now come to the question of whether a chattel mortgage is a sale, transfer or assignment in bulk of the goods and fixtures within the meaning of our Bulk Sales Law. Our Bulk Sales Act was passed by the Legislature to protect the rights of creditors from fraudulent sales of property upon which credit had been extended. *Fiske Rubber Co.*

v. *Hayes,* 131 Ark. 248, and *Stuart* v. *Elk Horn Bank &
Trust Co.,* 123 Ark. 285.   In several States having stat-
utes similar to ours as to the point under consideration,
the courts of last resort have held that the execution of
a chattel mortgage on a stock in trade is not a violation
of a statute forbidding a sale, transfer or assignment in
bulk, of any part or the whole of a stock of merchandise,
otherwise than in the ordinary course of trade.

In *Hannah & Hogg* v. *Richter Brewing Co.,* 12 A. &
E. Ann. Cas. 344, and 12 L. R. A. (N. S.) 178, the Supreme
Court of Michigan held that a chattel mortgage is not
within the meaning of a statute forbidding the sale, trans-
fer or assignment of a stock of goods in bulk without cer-
tain preliminary proceedings.   To the same effect see
*McAvoy* v. *Jennings,* 44 Wash. 79, 87 Pac. 53.   In *Noble*
v. *Fort Smith Retail Grocery Co.,* 46 L. R. A. (N. S.) 455,
the Supreme Court of Oklahoma held that a chattel mort-
gage covering a stock of merchandise, where the mort-
gagor remains in possession, and has the usual right of
redemption, creates a lien only, and does not pass title,
and is not a sale, exchange or assignment within the
meaning of its Bulk Sales Law, and is therefore not
within the inhibition of said statute.   In *Wasserman* v.
*McDonnell,* 190 Mass. 326, 76 N. E. 959, it appeared that
the owner of a stock of dry goods executed and delivered
a chattel mortgage thereon which was duly recorded.
There was a clause in the mortgage giving the mortgagor
the right to remain in possession of the goods and to sell
his stock in trade in the usual course of business.   The
mortgage also applied to all future stock that might be
acquired in the business.   There was a breach of the con-
ditions of the mortgage, and the mortgagee took posses-
sion of the mortgaged property for the purpose of fore-
closing it.   There was no actual fraud shown in the exe-
cution of the mortgage.   It was there contended that the
Bulk Sales Law of the State of Massachusetts applies to
a mortgage and the foreclosure thereof.   The court held
against the contention, saying:

"We are of the opinion, however, that this act has no application to the case at bar. The object of the statute was to protect creditors against fraudulent sales. Here no fraud was shown. The mortgage was on six months' time, and was given for a valuable consideration. It does not appear that, when it was given, the mortgagor had any creditors except the mortgagee. The mortgage was duly recorded."

So in the present case no actual fraud was shown. There was *bona fide* debt due from Mrs. A. A. Farrow to P. B. Farrow. She purchased a stock of goods from him and gave her note for the purchase price thereof. The mortgage was given to secure this note, and was duly filed for record.

It is also claimed that the mortgage was void because it contained a clause that the mortgage should apply to all future acquired stock that the mortgagor might have in his business. The court also held against this contention, and said:

"The law in Massachusetts is now well settled. While property acquired after a mortgage is delivered does not pass to the mortgagee as against attaching creditors and subsequent vendees and mortgagees, yet a provision in a mortgage that it shall cover all after-acquired goods operates as an executory agreement that such goods shall be holden by the mortgagee as security, when acquired by the mortgagor, and the mortgagee may take possession before the rights of third persons intervene. The mere fact that a person is a creditor is not enough. He must have a claim upon the goods before the mortgagee takes possession, either by attachment or by a seizure upon an execution." (Citing cases.)

The trend of our decisions is in accord with the holding of the Supreme Court of Massachusetts in both these respects. In *Little* v. *National Bank of Mena,* 97 Ark. 57, the court held that a mortgage conveying all the lumber on hand and all the lumber which the mortgagor should later acquire, though it provided that the mortgagor might sell such lumber on its own account in due

course of trade, constituted a valid lien upon such property against every person except subsequent purchasers and creditors acquiring a specific lien upon the property, and earlier decisions of the court were cited to sustain the holding. In that case the court also held that if the mortgagee takes possession of the mortgaged chattels before any other right or lien attaches, his title under the mortgage is good against everybody, if the mortgage was previously valid between the parties, although it would have been invalid as to subsequent purchasers or creditors acquiring specific liens because it gave the creditor power to sell on his own account in due course of trade. The court further held that the enforcement of the mortgage lien by the mortgagee taking possession, with the consent of the mortgagor, of the property covered by the mortgage was not a preference within our statute prohibiting preferences among creditors of insolvent corporations.

As above stated, no actual fraud was shown in the present case. The mortgage was valid between the parties. The mortgagee took possession of the property covered by the mortgage for the purpose of foreclosing the mortgage and discharging the mortgage indebtedness before the other creditors of the mortgagor had acquired any right to or lien upon the property. This he had a right to do under the principles of law above announced and the court erred in holding the mortgagee liable for the claims of the interveners.

It follows that the decree must be reversed, and the cause will be remanded for further proceedings in accordance with law and not inconsistent with this opinion.