PRINS *v.* AMERICAN TRUST COMPANY.

Opinion delivered October 5, 1925.

1. FRAUDULENT CONVEYANCES—BULK SALES LAW—MERCHANT DE-
   FINED.—A company organized primarily for the purpose of farm-
   ing, but which incidentally engages in selling merchandise to the
   tenants on its plantations, is a merchant within the application
   of the Bulk Sales Law.

2. FRAUDULENT CONVEYANCES—BULK SALES LAW CONSTRUED.—The
   Bulk Sales Law, in requiring notice to be given to creditors of
   a proposed sale in bulk, is not limited to those creditors who
   have extended credit on the mercantile business, but is for the
   protection of all creditors of the seller.

3. FRAUDULENT CONVEYANCES—BULK SALES LAW—INTENT TO DE-
   FRAUD.—A sale made in violation of the Bulk Sales Law is void,
   regardless of the intent of the parties conducting the sale.

4. FRAUDULENT CONVEYANCES—SALE OF MORTGAGED PROPERTY.—An
   unsecured creditor may not complain of the sale of mortgaged
   property, the proceeds of which were applied to the mortgaged
   debt.

5. FRAUDULENT CONVEYANCES—BULK SALES LAW—LIABILITY OF
   PURCHASER.—Where a sale is declared void for non-compliance
   with the Bulk Sales Law, the purchaser thereat becomes liable as
   a receiver to all the creditors of the seller *pro rata* merely, and
   not for the full amount of any creditor's claim.

Appeal from Chicot Chancery Court; *E. G. Ham-
mock,* Chancellor; reversed.

*Church & Gannaway* and *Coleman, Robinson &
House,* for appellant.

*Cooley, Adams & Fuhr,* for appellee.

WOOD, J. The Holland-Delta Company, hereafter
called Delta Company, is a New Jersey corporation
authorized to do business in Arkansas. It owns what is
known as the Red Leaf and Eminence Plantations, con-
taining 7,563 acres in Chicot County, Arkansas, on which
it conducted farming operations in the years 1922 and
1923. The Netherlands American Mortgage Bank, here-
after called Netherlands Bank, is a corporation of the
Netherlands authorized to do business in the States of
Arkansas and Minnesota. The American Bank & Trust
Company, hereafter called Trust Company, is a banking

corporation of Arkansas. On July 9, 1921, the Trust Company had obtained a judgment against the Delta Company in the sum of $20,081.48, which judgment was enrolled on the judgment docket in the office of the clerk of the circuit court of Chicot County on July 9, 1921. On the 8th of June, 1923, an execution was issued on this judgment and levied on the stock of goods in the store of the Delta Company on its Red Leaf Plantation and also on lumber that had been manufactured from timber cut from the lands of the Delta Company on the Red Leaf Plantation.

The Delta Company was indebted to the Netherlands Bank in the sum of $300,000, evidenced by a note for the principal sum dated September 1, 1920, with interest coupon notes attached, due annually thereafter on the first of February beginning with February 1, 1921, until the due date of the principal note in the year 1927. The interest due February 1, 1921, was $8,125, and the sum of $19,500 was due each year thereafter until 1927. These notes were secured by a deed of trust on the Red Leaf and Eminence Plantations. The Delta Company was also indebted on the 27th of February, 1922, to what is designated in the record as the Hollam Company in the sum of $75,000, to secure which the Hollam Company had a mortgage on all the mules and horses and all agricultural implements on the above plantations, but not including the stock of merchandise in the store on the Red Leaf Plantation. After the levy of execution on June 8, 1923, of the Trust Company above mentioned, one A. J. Prins instituted an action in the circuit court claiming to own the lumber upon which the execution had been levied; and he also instituted as action in the chancery court, in which he set up that he was the owner of the stock of goods on which the execution of June 8, 1923, had been levied. Prins sought by these actions to prevent the sale of the property, which had been levied upon as the property of the Delta Company, and to have the same declared his property.

The case at law was transferred to the chancery court, and the causes were there consolidated for trial. The Trust Company, the execution creditor, set up that the Delta Company was insolvent, of which fact Prins had knowledge at the time of his alleged purchase of the stock of goods from the Delta Company; that this pretended sale was fraudulent and made for the purpose of hindering and delaying the Trust Company in the collection of its debt; that Prins was but the mere dummy and agent of the Delta Company and acted for it in the pretended sale and transfer of the stock of goods, and, in fact, there had been no transfer of the control and possession of said store and stock of goods, but that the same remained in the possession of the Delta Company. The Trust Company further set up that the alleged purchase and transfer of the stock of goods was void because it was in violation of the Bulk Sales Law of the State of Arkansas.

The trial court found that "the said conveyances purported to be made to said A. J. Prins of the store and lumber were made at a time when said Holland Delta Company was insolvent and with the intent and purpose to hinder, delay, defraud and cheat the American Trust Company and other creditors, and that said stock of merchandise and lumber were at the time of the levy of said execution the property of the Holland Delta Company, and not the property of the plaintiff, A. J. Prins; that the value of said stock of merchandise is the sum of $3,750, and the value of said 70,000 feet of cypress lumber is the sum of $2100, and that the American Trust Company is entitled to recover from A. J. Prins, Holland Delta Company and Fidelity & Deposit Company of Maryland the sum of $5850," which with interest amounted to the total sum of $6,269.37, for which sum the court rendered a decree in favor of the Trust Company against Prins, his bondsman, the Fidelity & Deposit Company of Maryland and the Delta Company. From that decree is this appeal.

1. The first question is, was Prins the owner of the stock of goods in controversy? The Delta Company, in the fall of 1921, was unable to pay either the principal or interest on its accruing indebtedness; it could not pay its taxes for that year and was unable to finance its farming operations for the next year. The proof tended to show that on February 27, 1922, the Delta Company was hopelessly insolvent. The Netherlands Bank, its largest creditor, was threatening to foreclose its mortgage. To prevent this, the Delta Company and the Bank entered into an agreement by which the Delta Company was to lease its plantations in Chicot County for the year beginning March 1, 1922, and ending February 28, 1923, and also for the year 1923, to one A. J. Prins. The Bank agreed to furnish, and did furnish, Prins approximately $100,000 for the necessary operation of the plantations. Under agreement Prins was to apply the gross proceeds of the plantations, first to the repayment of the sums advanced by the Bank for operating expenses; second, to the five per cent. of the net proceeds to be retained by Prins; third, to the sums advanced by the Bank and the Holland Company for the payment of the taxes on the real and personal property for the year 1921; fourth, to pay the accrued interest on the mortgage loan of the Bank, and also the interest to become due February, 1923; fifth, to pay the taxes for the year 1922; and, six, to pay the interest that would accrue on the Hollam debt due December 1, 1922.

At the time of the execution of the lease, February 27, 1922, the Delta Company had in its store on the Red Leaf Plantation a stock of merchandise which inventoried at that time $2,388. The entire stock at that time was delivered to Prins' representatives, and in December following Prins paid the Delta Company for the stock, through check of the bank in its favor, which check was used by the Delta Company in payment of its taxes. At the time the stock of merchandise was turned over to Prins, the merchandise creditors of the Delta Company were notified of that fact by circular letter. The

arrangement was satisfactory to them. After the stock of merchandise was transferred to Prins, the goods thereafter purchased were purchased for Prins. The checks were made therefor on the Netherlands Bank, and the receipts were taken in Prins' name and sent to him. Prins was the manager of the St. Paul office of the Netherlands Bank. Vandertuuk was the manager of the Netherlands Bank, and Markle was the president of the Delta Company. These were the parties through whom the negotiations resulting in the leases and the taking over of the plantations and property of the Delta Company were effected. According to their testimony the whole arrangement was for the purpose of tiding over the then distressed financial situation of the Delta Company and to enable it to recoup its fortunes, if possible, by two years more of production on its splendid plantations in Louisiana and Arkansas. The arrangement, they claimed, and their testimony tended strongly to prove, was not only for the benefit of the creditors of the Delta Company, who held mortgages against it, but also for the benefit of all other creditors.

The appellants contend that the conduct of the officers of the bank and of the Delta Company, through whom the negotiations were effected, were open and above board and show conclusively that there was no actual intent upon the part of the Delta Company to transfer the stock of merchandise to defraud the Trust Company or any other creditor. We are convinced that the appellants are correct in this contention.

To be sure, the Delta Company had a perfect right, if it elected so to do, to deliver possession of the plantations to the bank as its mortgagee to prevent foreclosure. By complying with the Bulk Sales Law, it had the right to sell its stock of merchandise to Prins or the bank upon a fair consideration and the right to use the proceeds of such sale, as it did, in the payment of its taxes. None of these acts would have been fraudulent either in fact or in law and would not have subjected the stock of merchandise to the execution of the Trust Com-

pany. But such is not this case, and such issue is not germane to the pleadings in the cause.

The bank is neither claiming the stock of merchandise in its own right or through Prins as its agent, but, on the contrary, Prins is claiming the property in his own right by virtue of the purchase thereof from the Delta Company. Now, the stock of merchandise at the time of its alleged sale and transfer to Prins was not under mortgage. It could be reached by execution issued at the instance of the judgment creditors of the Delta Company. Therefore, in order to give Prins title to the stock of merchandise, unhampered by the claim of the creditors of the Delta Company, it was necessary that the sale to him be made in compliance with our Bulk Sales Law, provided that statute is applicable to the facts of this record. This is the bed which Prins has made for himself, and upon which he must lie.

Learned counsel for appellants, however, contend that the Bulk Sales Law has no application to the facts of this record for the reason, as they assert, that the business of the Delta Company, primarily was that of farming and not that of selling merchandise, and that the sale of the merchandise to Prins was only incident to the lease of its plantations and the conduct of its farming operations. We cannot concur in this view. The line of demarcation between the business of merchant and planter is so clear that, whether conducted by the same or different persons, they are entirely separate and distinct avocations. It may be necessary for the planter, in order to carry on successfully his farming operations, to have a store on, or convenient to, his plantation to sell merchandise to his tenants; but nevertheless the sale of such merchandise, whether by the planter himself or another, is the distinct business of a merchant and not that of a planter. It occurs to us that the Delta Company, while it was selling its merchandise to the tenants on its plantations as well as when it was selling its stock of goods to Prins, was engaged in the course of trade of a merchant and not of a planter.

The appellents further contend that the provisions of the Bulk Sales Law, with regard to the list of creditors and notice to be given them, have reference only to those creditors who have extended credit, on account of the mercantile business. But the statute contains no such limitations. On the contrary, it declares in effect that any sale in bulk, otherwise than in the ordinary course of trade, shall be void as against the *creditors* of the seller unless the purchaser demands and receives from the seller a written list of the names and addresses of the *creditors* of the seller, and unless the purchaser shall at least ten days before taking possession of the merchandise notify personally or by registered mail *every creditor* whose name and address is stated in said list, or of whom he has any knowledge, of the proposed sale, etc. Sec. 4870, C. & M. Digest. The appellee Trust Company had the right to avail itself of this statute.

The question in the last analysis, therefore, is whether or not the Bulk Sales Law was complied with. The undisputed testimony shows that it was not in at least two particulars—a written list of the names and addresses of the creditors of the Delta Company and the amounts owing to each of them was not demanded by Prins, nor was it furnished him; nor was the Trust Company notified personally or by registered mail of the proposed sale, the price, terms, and conditions thereof, as the statute requires. Although those conducting the negotiations did not intend actually to defraud the creditors in the sale and transfer of the stock of merchandise, nevertheless it was a sale and purchase in violation of the Bulk Sales Law. It was void under the express declaration of the statute, and fraud is conclusively presumed. See § 4870, *supra; Stewart* v. *Elkhorn Bank & Trust Co.,* 123 Ark. 285-290. The trial court therefore ruled correctly in declaring the sale of the stock of merchandise void.

2. So far as the sale of the stumpage and the lumber produced therefrom is concerned, but little need be said. This stumpage and the entire product therefrom

when manufactured into lumber belonged to the Netherlands Bank under its mortgage. It was not subject to the execution of the Trust Company. The Netherlands Bank gave its consent to the sale of the stumpage and the lumber manufactured therefrom, and the testimony does not warrant the conclusion that the sale of this lumber was made with the intention to defraud creditors. It was sold for a fair price, and when no valid lien had been fixed upon it by the Trust Company, and the proceeds were applied to the payment of the interest of the Delta Company's indebtedness to the Netherlands Bank. The Netherlands Bank is the only one that had any lien on this lumber at the time it was sold. It is not complaining, and the Trust Company has no right to complain. Under the pleadings and proof in this record the appellee can not subject the equities of the Delta Company, in the lumber, to the payment of its judgment.

3. Although the court ruled correctly, as we have seen, in declaring the sale of the stock of merchandise void, because in violation of the Bulk Sales Law, nevertheless, the court erred in rendering a decree in favor of the appellee Trust Company for the entire value of the stock of merchandise as ascertained at the time the sheriff levied the execution thereon. The undisputed testimony shows that the value of the stock of merchandise at the time the sale was made to Prins was $2,388. Where a sale is declared void for non-compliance with the Bulk Sales Law, the purchaser at such void sale becomes liable as a receiver to all creditors of the seller *pro rata* merely, and not for the full amount of the claim. *Steward* v. *Elkhorn B. & T. Co., supra; Ledwidge* v. *Arkansas National Bank,* 135 Ark. 421; *Griffin* v. *Shoe Co.,* 137 Ark. 37. See also *Davis* v. *Kramer,* 133 Ark. 239. The fact that other creditors have not presented any claims against Prins in this action does not have the effect of transferring their *pro rata* interest to the appellee Trust Company. The residue, after deducting the Trust Company's *pro rata* share of the purchase price of the

stock of merchandise, belongs to the other creditors of the Delta Company, and not to the appellee Trust Company.

It follows as a result of our views that the decree of the trial court is erroneous, and such decree is therefore reversed, and the cause will be remanded with directions for such other and further proceedings according to law as may be necessary to conserve the rights of the parties and not inconsistent with this opinion.