**HUCKINS v. SMITH.**

**In re GATLING.**

Circuit Court of Appeals, Eighth Circuit.
December 14, 1928.

No. 8063.

Frank S. Quinn, of Texarkana, Ark., for appellant.

Will Steel, of Texarkana, Ark., for appellee.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and POLLOCK, District Judge.

VAN VALKENBURGH, Circuit Judge. September 17, 1927, appellant filed, before the referee, in bankruptcy in the District Court of the United States for the Western District of Arkansas, his intervention, by which he claimed and sought to establish a lien against certain property of one Richard J. Gatling, bankrupt, by virtue of two chattel mortgages; the first dated June 8, 1926, securing a note of $1,300, and the second of date June 15, 1927, securing the same note and a later note of $3,125. An additional claim was made for rentals in the sum of $975, alleged to be secured under the terms of said mortgages. The first mortgage covered a large portion of the fixtures, stated in brief to be about 80 per cent. of the whole, located in the store building of the bankrupt, which was occupied in the business of men's clothing and furnishing goods. The second mortgage covered all the fixtures in the store. These fixtures were substantial in number and value, as will be seen from the list attached to the second mortgage, to wit:

"2 safes, 1 Burroughs adding machine, 1 Royal typewriter, 4 desks, 2 settees, 1 stool and cabinet, catalogue rack and stand, 2 office chairs, 1 clothing cabinet, water table and cooler, leather goods cabinet, 3-section hat

case, 2 mirror doors, mirror alcove and cap cabinet, 1 two rod clothing section, 2 clothing cabinets, 1 mirror alcove and dressing room, 23 sections shelving, 6 four-foot display cases, 1 six-foot display and wrapping case, 2 stoves, 2 gas lamps, 4 rugs, 1 costumer and 4 chairs, 3 windmill signs, 2 scales, 3 filing cabinets and office fixtures, all window fixtures, shirt, tie, hose, and glove display stands and racks for inside and outside of cases, 1 shoe rug, 1 display counter, store and window light fixtures, 7 fans, 1 work clothing cabinet, 1 six-foot L display case, 1 8-ft. shirt case, 1 umbrella case, 1 jewelry and 3 collar display cases, 1 cash register, 1 weighing scales, 3 display tables, 1 clothing display table, 3 heavy 6-ft. display tables, 8 5-ft. display tables, 6 shoe chairs, 2 shoe stools."

At a sale by the trustee they sold for $3,-450. The stock of merchandise, independent of fixtures, sold for $3,000. The referee denied the application for lien, and his order to this effect was affirmed by the court. The grounds of the decision were that in the taking of both mortgages the intervener did not comply with the requirements of the Bulk Sales Act of Arkansas, and that in addition thereto the second mortgage constituted a preference within the terms of the act of bankruptcy.

At the outset appellant challenged the Bulk Sales Act of Arkansas as arbitrary in its classification, unreasonable and an invasion of the Fourteenth Amendment to the Constitution of the United States. This contention is obviously without merit. This act, as similar legislation in other states, has been held to be a valid exercise of the police power of the state. Stuart v. Elk Horn Bank & Trust Co., 123 Ark. 285, 185 S. W. 263, Ann. Cas. 1918A, 268; Lemieux v. Young, Trustee, 211 U. S. 489, 29 S. Ct. 174, 53 L. Ed. 295; Kidd, Dater Co. v. Musselman Grocer Co., 217 U. S. 461, 30 S. Ct. 606, 54 L. Ed. 839.

The second chattel mortgage was executed June 15, 1927. On September 6, 1927, the mortgagor was duly adjudicated a bankrupt. The record abundantly shows that the claimant was well aware of the condition of the bankrupt, who was hopelessly insolvent at the time the second mortgage was taken; therefore no claim of lien, based upon that mortgage, can be sustained in any event.

There remains for consideration the contention of appellant that the court erred in finding that the first mortgage was in conflict with the Bulk Sales Law, and was therefore void, and in finding that the law applied to mortgages given as security merely. The same contention was made with respect to the second mortgage, but that contention need not longer be considered. The original Bulk Sales Act, section 4870 of Crawford & Moses' Digest of the Statutes of Arkansas, reads as follows:

"The sale, transfer or assignment, in bulk, of any part of or the whole of a stock of merchandise or merchandise and the fixtures pertaining to the conduct of any such business, otherwise than in the ordinary course of trade and in the regular prosecution of the business of the seller, transferrer or assignor, shall be void as against the creditors of the seller, transferrer, or assignor, unless the seller, transferrer or assignor and the purchaser, transferee and assignee, shall, at least ten days before the sale, make a full detailed inventory and preserve the same, showing the quantity, and, so far as is possible with the exercise of reasonable diligence, the cost price to the seller, transferrer and assignor of each article to be included in the sale; and, also, unless the purchaser, transferee and assignee demands and receives from the seller, transferrer or assignor a written list of the names and addresses of the creditors of the seller, transferrer or assignor, with the amounts of the indebtedness due or owing to each, certified by the seller, transferrer or assignor under oath to be a full, accurate and complete list of his creditors and of his indebtedness; and also unless the purchaser, transferee or assignee shall, at least ten days before taking possession of such merchandise and fixtures or paying therefor, notify personally or by registered mail every creditor whose name and address is stated in said list, or of whom he has any knowledge, of the proposed sale and the price, terms and conditions thereof."

In the case of Farrow v. Farrow, 136 Ark. 140, 206 S. W. 134, the Supreme Court of Arkansas held that the act as it then stood did not apply to mortgages. March 15, 1923 (Acts 1923, No. 374, p. 340), the Legislature amended the act as follows:

"The sale, transfer, mortgage or assignment, in bulk of any part of or the whole of a stock of merchandise, or merchandise and fixtures pertaining to the conduct of any such business, otherwise than in ordinary course of trade and in the regular prosecution of the business of the seller, transferrer, or assignor, shall be void as against the creditors of the seller, transferrer, mortgager, or assignor unless the seller, transferrer, mortgager or assignor and the purchaser, transferrer, or assignee, shall, at least ten days before the sale, or the giving of said mort-

gage, make a full detailed inventory and preserve the same showing the quantity and, so far as is possible with the exercise of reasonable diligence the cost price to the seller, transferrer and assignor of each article to be included in the sale; and, also unless the purchaser, transferrer or assignee demand and receives from the seller, transferrer or assignor a written list of the names and addresses of the creditors of the sellers, transferrer or assignor, with the amounts of the indebtedness due or owing to each, certified by the seller, transferrer or assignor under oath to be a full, accurate and complete list of his creditors and of his indebtedness; and also unless the purchasers, transferrer or assignee shall, at least ten days before taking possession of such merchandise and fixtures or paying therefor, notify personally or by registered mail every creditor whose name and address is stated in said list, or of whom he has any knowledge, of the proposed sale and the price, terms and conditions thereof."

We think the contention that the amended act does not apply to mortgages in general, including those in suit, is obviously without substance. It is conceded that the intervener, appellant herein, did not comply with the requirements of this amended section. The main argument advanced is that, even though the statute covers mortgages given as security, it does not apply to those upon fixtures alone, apart from merchandise, as the latter term is commonly understood.

As to whether trade fixtures in themselves constitute merchandise, as that term is used in the statutes, there is conflict in the decided cases. In Massachusetts it has been held that they do not; that the phrase "stock of merchandise," as used in the statute, describes articles which the seller keeps for sale in the usual course of business. Gallus v. Elmer, 193 Mass. 106, 78 N. E. 772, 8 L. R. A. (N. S.) 1067.

In Mississippi it is held that fixtures and other appliances used in connection with business constitute part of a stock of merchandise, and come within the terms of the Bulk Sales Act of that state. The court says: "To limit the statute strictly to goods kept for sale would, in a large measure, defeat its purpose." Walton v. Walter Fisher Co., 146 Miss. 291, 111 So. 364.

In Cooney, Eckstein & Co. v. Sweat, 133 Ga. 511, 66 S. E. 257, 25 L. R. A. (N. S.) 758, it is said that the word "merchandise" is "not to be taken in such a restricted sense as to exclude the usual and customary accessories of a mercantile or trading establishment when a sale in bulk is made of the whole." In Bowen v. Quigley, 165 Mich. 337, 130 N. W. 690, 34 L. R. A. (N. S.) 218, it was held that the Bulk Sales Law did not apply to a transfer of horses, wagons, harnesses, coal bags, and other implements used in the coal business, where no coal or other merchandise or fixtures were included in the conveyance, and that the word "fixtures," as used in the statute, has reference to such chattels as merchants usually possess and annex to the premises, to enable them the better to store, handle, and display their goods and wares. The inference from the decision in that case is that, if such fixtures had been transferred, the application of the Bulk Sales Act would have been sustained.

However, reference to the amended act itself convinces that it was intended to apply to the sale, transfer, mortgage or assignment in bulk of any part or the whole of the "stocks" therein described. Such stocks are described in the following language: "A stock of merchandise or merchandise and the fixtures pertaining to the conduct of any such business." The application of the act was not confined in perhaps the usual manner, to the term "stock of merchandise," which may, or may not, under the divergent views we have just considered, include fixtures. Reference was then made to another and more comprehensive stock, to wit, "merchandise and fixtures pertaining to the conduct of any such business." Obviously the words "a stock of" are to be read in after the word "or" and before the word "merchandise" in the latter designation. So, then, we have the act made to apply to a stock of merchandise and fixtures pertaining to the conduct of any such business, and the mortgage in bulk of any part of, or the whole of, such a stock composed of both merchandise and fixtures, without complying with the requirements of the statute, is prohibited.

It would seem obvious that the part of such a stock disposed of may consist of merchandise alone or fixtures alone. This construction receives support from the language of section 4872 of the same act, which provides: "That any purchaser, transferee," mortgagee, "or assignee who shall conform to the provisions of this act shall not be held in any way accountable to any creditor of the seller, transferrer or assignor for any of the goods, wares, merchandise or fixtures that may come into his possession by virtue of such sale, transfer or assignment." It will be seen that here the word "or," instead of "and," is used, thereby indicating that fixtures alone may have come into possession of the mortgagee unaccompanied by merchandise.

■ It is further insisted by appellant that benefits can accrue only to creditors who were such at the time the mortgage was executed, and that the record is silent as to the existence of such creditors. However, in Prins v. American Trust Co., 169 Ark. 455, 275 S. W. 914, the Supreme Court of Arkansas has held that the provisions of the Bulk Sales Law are not limited to those who have extended credit on the mercantile business, but is for the protection of all creditors of the seller. A number of federal cases are cited by appellant in support of his contentions. These cases all arose in Texas and involved the Bulk Sales Act of that state. Examination discloses that these decisions were based upon the consideration that the Texas law did not include mortgages within its terms.

■ In Haglin & Pope v. Rogers, 37 Ark. 496, the Supreme Court of Arkansas, speaking of another remedial statute, says: "The act is strictly remedial, and to be construed liberally, to meet the evil intended to be alleviated, and to advance the remedy. 'Everything is to be done in advancement of the remedy that can be given, consistently with any construction that can be put upon it.'"

It is the policy of that state, as disclosed by its decisions, that in case of ambiguity construction must have regard for the general spirit and intent of the law and to the object to be attained. We think it no strained construction to hold that a sale or mortgage of fixtures alone, from a stock composed of merchandise and fixtures, is within the purview of the Bulk Sales Act and subject to its provisions. The trial court concluded its opinion with the following words: "To say that a sale or mortgage of the fixtures would not come within the meaning of the law unless merchandise were also included in the sale 'would in a large measure defeat its purpose.'" In this we concur.

The decree below is affirmed.